SARAH B. SPENCER, Tutrix of John N. E. De Hart and others, Minors, *v.* ALFRED T. CONRAD, Administrator of the succession of John De Hart, deceased.

In the absence of any evidence of debts existing against a community between husband and wife, the legal presumption is that there are none.

Where the petition alleged that certain slaves claimed by the plaintiffs belonged to their ancestress at the time of her marriage, they may amend their petition by averring that the title of their ancestress was made subsequently to her marriage.

Spencer, Tutrix, v. Conrad, Administrator.

Such an amendment does not change the nature of the demand. Amendments after issue joined, depend on the exercise of a sound, legal discretion, and ought to be allowed wherever the administration of justice requires it. C. P. 419.

Though the sale of the property of minors may be invalid from the want of the formalities prescribed by law, it will be no defence to an action against their tutor for the price, which had been received by him. The formalities prescribed for the sale of minors' property, are intended for their protection alone ; the nullities resulting from the want of their observance, are relative, of which the purchaser cannot take advantage ; the minors alone can oppose them.

Art 345 of the Civil Code, which declares that " a tutor, cannot, without authority from a judge, by and with the advice of a family meeting, accept or refuse an inheritance which has descended to the minor," does not apply to a sum given to the minors by their grandmother as an advance on their share in her succession. Such a donation may be accepted by the tutor, or by either of the parents, or by any legitimate ascendant of the minors. C. C., 1533.

In an action by the tutrix of the minor heirs of a deceased wife against the administrator of the husband's estate, to recover the amount of a note, made by a third person, and alleged to have been given to the wife by her mother, and the amount received by the husband, the maker of the note, offered as a witness to prove its payment, testified that he had paid its amount, about fourteen years before, to plaintiff, but that the note bore the receipt of the defendant's intestate. The note was payable to the intestate, who obtained the amount from the plaintiff, and receipted for it on the back of the note. On an objection to the testimony, on the ground that the receipt was the best evidence of the payment : *Held*, that the evidence was admissible ; that when the plaintiff was reimbursed the amount of the note, she surrendered it doubtless to the intestate ; that after the lapse of fourteen years, it cannot be presumed that the note has been preserved ; and that the rule that the best evidence must be produced, means only, that so long as the higher or better evidence is within the power of the party, he shall not be allowed to introduce inferior.

APPEAL from the Court of Probates of St. Mary, *Dumartrait*, J. *Olivier* and *Voorhies*, for the plaintiff.

*Gibbon* and *Maskell*, for the appellant.

MORPHY, J. This is an action brought by the grandmother and tutrix of the minor children of the late John De Hart, against the administrator of his estate, to settle and liquidate the rights and claims of said minors, as heirs of their deceased mother, Cornelia S. De Hart. The petitioner alleges that, on the death of the minors' mother, their father, John De Hart, was confirmed as their natural tutor, and administered their property up to the time of his death, which took place in December, 1841, That John De Hart and Cornelia S. Evans were married in the parish of West Feliciana, and that, at the time of her

marriage, she owned upwards of twenty slaves, and a tract of land in the said parish, all free from any incumbrance. That after her marriage, Cornelia S. De Hart received from the plaintiff, her mother, in payment of her patrimony, and on account of the over valuation of her said land, a note of F. A. Evans for $650, besides several slaves, for which a deed of conveyance was executed to her; and that the note bore interest at five per cent from the 26th of June, 1826, and was paid to said John De Hart. That from 1824 to 1829, De Hart resided in West Feliciana, engaged in the cultivation of cotton, when he purchased from Ely Broussard a plantation in the parish of St. Mary, called the "Orange Grove," which was his last place of residence. That for the plantation he contracted to pay $11,000, in four instalments, to-wit, $2000 cash, $2000 in March, 1830, $3000 in March, 1831, and $4000 in March, 1832. That being unable to complete all these payments, the plaintiff advanced to said De Hart, for that purpose, the sum of $3784 63, with the express understanding that the same should be considered as given to his minor children in advance of their share in the succession of their grandmother, the plaintiff. The petition further represents that, shortly after the death of Cornelia S. De Hart, which occurred in December, 1832, an inventory was taken, in which the rights of the minors are fully shown. That the crop of 1832, having been made previous to, and being unsold at the time of the death of Cornelia S. De Hart, her heirs are entitled to one half of the nett proceeds thereof; and that in addition to the property recognized and set apart as the separate property of the minors, they are justly entitled to the following sums, to-wit:

1st. One half of the community property which existed at the death of their mother, and the revenue thereof.

2d. The amount of the note of $650, drawn by F. A. Evans, with interest thereon from 29th June, 1826.

3d. One half of the crop of sugar and molasses made on the "Orange Grove plantation," during the year 1832, to-wit: $1962 75.

4th. The nett amount of the proceeds of the slaves sold as belonging to the minors, amounting to $1380.

5th. The amount advanced to John De Hart for the account of the minors, to-wit, $3784 60, on the 9th of April, 1834, with interest thereon.

6th. The hire of the slaves, the separate property of the minors.

The petitioner further represents, that a public sale has been made of all the property left by the said De Hart, which amounted to $24,846 91, and that, according to the advice of a family meeting, a large portion of said property was adjudicated to the minors, &c.

The petition concludes with a prayer that all the property belonging to the minors De Hart, as the heirs of Cornelia S. De Hart, their mother, be recognized and set apart to them as such, or the value thereof accounted for, and that their tutrix do recover the sum of $25,000, or whatever sum said minors may be entitled to upon a fair settlement and liquidation of their claims ; &c.

The defendant, after a formal denial, denies specially that any profits were made during the existence of the community, and avers that the same was insolvent; he denies, further, that Cornelia S. De Hart had in possession, at the time of her marriage, any slaves as her paraphernal property ; and avers that all the slaves in the possession of De Hart at the day of his death, were purchased long after his marriage with said Cornelia S. Evans, and that the same were illegally delivered over to the plaintiff in this suit, she having claimed them as belonging to the minors, when in reality they belonged to the community that existed between said De Hart and his wife. The defendant further says, that from the 25th of December, 1832, to the day of his death, John De Hart was the overseer and manager of the plantation and slaves, and as such was entitled to one thousand dollars per annum during said time, as a compensation for his services, to be deducted from the nett proceeds of the crops; and that the said De Hart has a large claim against said minors for their maintenance and education, amounting to at least $300, for each, per annum, from the 25th of December, 1832, up to the time of his death. The defendant further avers, that the estate of De Hart is not indebted to said minors for the proceeds of the sale of

the slaves, *Jim, Stack, Stepney, Milly* and her two children, as no legal sale has been made of said property, and that the title is still vested in the minors, because no legal family meeting authorized the sale, the under-tutor of the minors not being present at said family meeting. The defendant further specially denies that any donation or advance of $3784 60, was ever made by the plaintiff as alleged, and avers that if J. De Hart ever received said amount, it was cash loaned to him by the plaintiff for his individual use, and not to pay for the land purchased of Broussard, as the same was all paid for prior to the time the amount was loaned, &c.

The plaintiff, by leave of the court below, amended her original petition by alleging that John De Hart and Cornelia S. Evans were married in the year 1824 ; but that the title to the slaves claimed in kind was made and completed only in the year 1825.

There was a judgment below in favor of the plaintiff, from which the defendant appealed.

At the death of Mrs. De Hart, an inventory of the community was made on the 21st of February, 1833, amounting to $12,987 50, in which the *Orange Grove plantation* is appraised at $12,000. This inventory, which is signed by J. De Hart and the under-tutor of the minors, mentions, as the separate property of the succession of Cornelia S. Evans, the very slaves which are claimed in kind in this suit. There is no evidence in the record showing that, at that time, the community was indebted. An attempt has been made to show that a large amount was yet due on the Orange Grove plantation in 1833, by the production of an account in the handwriting of De Hart, which was found among his papers, and which mentions payments as having been made on said property as late as 1840. Even if this paper could be considered as evidence, it is contradicted by the defendant's answer, which avers that the Orange Grove plantation, bought of Broussard, was entirely paid for prior to the advance of $3,784 60, made by the plaintiff in 1834. The last instalment for this land became due in March, 1832, and the evidence shows that it was to enable De Hart to make his payments, that the plaintiff agreed to place in his hands, as an advance to her grandchildren on her succession, the aforesaid

amount. In the absence of evidence that the [community was indebted, the legal presumption is that no debts existed.

In regard to the slaves claimed as the separate property of the minors, they appear to have been conveyed by the plaintiff to her daughter, Cornelia S. Evans, on the 14th of April, 1825, in part payment of a sum of $17,686 16, which she owed to her as her tutrix, for her portion in the estate of her father, Nathaniel Evans. They were recognized and set apart as her separate property in the inventory made after her death, and when J. De Hart died, they were delivered to the plaintiff as belonging to the minors. The idea of claiming them as bought by the community, seems to have been suggested by the error committed in the first petition presented by the plaintiff, which alleged that they belonged to Cornelia S. Evans at the time of her marriage ; and a bill of exceptions was taken to the amendment permitted by the judge, on the ground that " it altered the substance of the demand as originally made." This amendment did not in the least change the nature of the demand, but merely sets forth the *correct date* when the title to the property was made to Cornelia S. Evans. Had it not been allowed, the defendant would surely had objected to the introduction of the deed of 1825, by which she became owner of the slaves, on the ground that the *allegata* and *probata* must agree ; and had this succeeded, the slaves might *possibly* then have been considered as belonging to the community. Amendments after issue joined depend on the exercise of a sound and legal discretion, and ought to be allowed in all cases where the administration of justice requires it. Code of Practice, art. 419. 2 Mart. N. S. 626.

The claims made on behalf of the estate of John De Hart, for his wages as an overseer, from 1833 to 1841, and for expenses for the maintenance and education of his children, were properly disallowed by the inferior court. The deceased during all that time was working for his own account, and enjoyed all the crops made. He has been justly decreed to pay only for the rent of the half of the land belonging to his children, and for the hire of their slaves. As relates to the value of the services of the slaves, the testimony is somewhat contradictory, as it

usually happens in *matters of opinion;* but the conclusion to which the court below arrived is, we think, sustained by the evidence. In relation to the expenses of the minors, it is shown that they have always lived with the plaintiff from the time of their mother's death, except John N. De Hart, who was at school in Kentucky, and that she paid all their expenses.

It is next urged that as the title of the minors to certain slaves which have been sold, vests still in them, by reason of informalities in the proceedings which led to the sale, they cannot claim the price received by their deceased father, but must claim the property, which has not ceased to be theirs. The illegality spoken of, is the absence of the under-tutor of the minors, who, it appears, was not present when the family meeting deliberated, but who afterwards approved of their decision at the foot of the *procès-verbal* drawn up by the judge. Admitting that this irregularity is such a one as would avoid the sale if taken advantage of by the minors, we cannot see any right in the tutor, who has received the proceeds of the property, to withhold it on that account. The purchasers of these slaves may not, and probably will not be disturbed by the minors, who, when thay become of age, may, by receiving the price, render the sale perfectly valid. This court has often held that the formalities prescribed for the sale of minors' property, being intended for their protection, the nullities resulting from a want of these formalities, are relative nullities, of which even the purchaser cannot take advantage, but which the minors alone can oppose. 10 Mart. 281. 6 Ib. N. S. 362.

The defendant next contends, that the sum of $3784 60, claimed on behalf of the minor children of De Hart, with a mortgage against the estate for its payment, is a debt due to the plaintiff in her own right by the deceased, and for which she must sue in her own name, as an ordinary creditor. The written acknowledgement, signed by De Hart, is in the following terms, to-wit:

" Due Mrs. Sarah B. Evans, three thousand seven hundred and eighty-four dollars, and sixty cents, having been advanced

at sundry times to the estate of Cornelia S. Evans De Hart, and which sum I promise to pay on demand, as tutor of the said estate.

JOHN DE HART."

" Oakland, 9th April, 1834."

To explain this document, the plaintiff offered the evidence of N. E. and F. A. Evans, the brothers of the minors' mother, who testified that sundry payments in money had been made by the plaintiff to John De Hart, as tutor of the minors, both before and after the death of Mrs. De Hart, which were an advance on account of the share of Mrs. De Hart in the succession of her mother, the present plaintiff.   These witnesses wers objected to on the score of interest, as the amount so advanced must be collated to the succession of Mrs. Evans, their mother, at her death.   The interest which these witnesses have in this suit, is not very apparent or direct ; but whether such an interest exists or not, it is unnecessary to examine, as we are satisfied from the words of the instrument itself, that the money was intended by the plaintiff as an advance to her grandchildren, and not as a loan to her son-in-law ; although it is clear that she was influenced by the desire of facilitating him in his business, when she made these advances to his children.   But it is insisted that if this money was intended as a donation to the minors, the tutor could not accept it without the advice and consent of a family meeting ; and we are referred to article 345 of the Civil Code, which requires this formality for the acceptance, or repudiation of an inheritance which has descended to a minor.   It surely does not apply to a donation, which can be accepted by either of the parents of a minor, though they be not his tutors.   Civil Code, art. 1533.

In relation to the note of $650, drawn by F. A. Evans, the evidence shows that it was given to John De Hart, together with certain slaves, of which the plaintiff made a donation to his wife, in June, 1826,  The drawer, who was produced to prove its payment, testified that he paid it into the hands of the plaintiff, but that the note bore the receipt of De Hart to her on its back for its amount.   On this fact appearing, the defendant's

counsel objected to the testimony, on the ground that the receipt was the best evidence of payment. The objection being overruled, he took a bill of exceptions. We think that, under the circumstances of this case, the court did not err. The rule that the best evidence must be adduced, means only that so long as the higher or superior evidence is within a party's power, he shall give no inferior proof in relation to it. This note had been made to the order of De Hart, who, it would appear, obtained the money from the plaintiff, and receipted for it on the back of the note. When she was reimbursed by the maker, she surrendered, no doubt, the note to him. After the lapse of fourteen years, it can hardly be presumed that this note, which was supposed to be of no value to any one, has been preserved.

Upon the whole, we have carefully examined the testimony in this case, and have come to the conclusion that justice has been done between the parties.

*Judgment affirmed.*