In the matter of the Succession of Ira Smith.

M. A. Smith, Testamentary Executrix of Ira Smith.

| 9 | 107 |
| 46 | 129 |
| 46 | 1020 |

| 9 | 107 |
| 52 | 1916 |
| 9 | 107 |
| 115 | 716 |

| 9 | 107 |
| 125 | 708 |

The testator directed that the community property belonging to himself and wife should be kept together, the proceeds to be applied to the payment of his debts and certain legacies; he appointed his wife *testamentary executrix*, and bequeathed to her a life estate in his property, with permission to sell the personal estate, but prohibiting the sale of the real estate. The wife "claimed the usufruct of the entire estate of her deceased husband during her life, without waiving, but expressly reserving the usufruct of the one half of the community belonging to said estate, as accorded to her by the act of 1844, in case the provisions of said will should be declared invalid." *Held:* the rights of the widow as usufructuary, either under the will or the Act of 1844, stand unaffected by her appointment as testamentary executrix. Neither are her rights, as surviving partner in community, controlled by the dispositions contained in the testator's will. At the death of the testator her rights were fixed by law—as survivor, she could either sell a sufficient amount of community property to discharge the debts, and exercise her right of usufruct on one half of the residue, or retain the whole property and receive its fruits on paying the debts herself.

In default of funds sufficient to discharge the debts and legacies of sums of money, the testamentary executor shall cause himself to be authorized by the Court to sell the movables and the slaves, not employed on plantations, and if they are insufficient, the immovables to a sufficient amount, to satisfy those debts and legacies. C. C. 1661, 1662, 1663, 1155, 1156. C. P. 990.

In a sale, for the payment of debts, of property belonging to a succession in which minors are interested, it is not necessary to observe the formalities required by law for the alienation of minor's property, the interest of such minors being considered merely residuary.

The claim for the erection of a tomb over a deceased husband must be borne by his estate and not by the community.

The Court appointed an attorney to represent an absent minor who was a legatee of the testator. The executrix filed an account, which the attorney opposed, claiming to be placed on it for professional services rendered the absent minor, and praying that the amount might be paid out of the revenues of the estate. *Held:* the allowance of the claim would be in contravention of the 71st Article of the Constitution of 1845, but the judgment is without prejudice to the right of the attorney to claim compensation for his services from the estate of the minor.

A judgment rendered in an action against an executor cannot be inquired into by a legatee upon an opposition, to the executor's account. C. P. 986, 987.

APPEAL from the District Court of the parish of Pointe Coupée. *Farrar*, J.

*Ratliff*, for opponent and appellant.

Mrs. *Mary Ann Smith*, being a widow in community, and claiming to take under the will, is a common debtor for all the community debts, and cannot claim and take out of the common stock her separate and paraphernal property, until all the debts are paid. She cannot be in and out of the community at the same time; she is not entitled to a judgment against her deceased husband's estate for a specific sum of money, with interest from a certain date, but must await the full administration and payment of all the debts of the estate. See *Succession of Thomas*, 12 R. R. 215; *Harvey* v. *Foley*, 1 R. R. 378; *Fortier* v. *Slidell*, 7 R. R. 378; *Depas* v. *Riez*, 2d Ann. 30. She has not renounced the community, and must await the final settlement of the estate. Therefore, the judgment decreeing a sale of property to pay the paraphernal claim of Mrs. *Mary A. Smith*, the widow in community, is erroneous, and should be reversed.

*Dr. Smith* undoubtedly meant, that the revenues of the estate should be applied: First, to the payment of his debts; and then to the discharge and payment of his bequest, and movable legacies; and, that done, the whole was to be for the benefit of his surviving wife, during her life. But we contend that the clause of his will, prohibiting the sale of his property, unless it be absolutely necessary to pay debts, is sufficient of itself to authorize a reversal of the judgment; as no actual necessity is shown, no creditor demanded it, by suit or otherwise; the debts were small in comparison with the estate; the

SUCCESSION OF
IRA SMITH.

revenues very large. And, can property, whose minors are interested, be sold to pay debts, unless it is absolutely necessary and demanded by the curators. Code of Practice, 990 ; C. C. 334, 385, 336.

I will next examine the judgment of the court below, as to my claim for professional services ; the court rejected the demand upon constitutional grounds alone. He seems to think I could not be paid, under article 71 of the constitution, as it was an allowance by the court, which was prohibited by the constitution.

I beg leave to differ with the court, à quo, on this point. This is not an allowance by the court, but a claim for professional services, absolutely rendered upon the application of the executrix herself; the object and intention of that article in the constitution was to prohibit courts of justice from making allowances to attorneys for absent heirs, of their own free will, without proof of the value of those services ; and I am not sure but that clause was introduced in the constitution by one of the distinguished gentlemen now gracing this honorable court, as chief justice. The judge of the lower court received proof of the value of the services, which was fully proven by two of the opposing counsel, Messrs. Brewer and Phillips. He rejected the demand, but suggested or rather reserved my remedy to be pursued in another form of action. Did he mean for me to bring suit against the executrix of the estate, and liquidate my demand against it. Here the law abhors an accumulation of actions when one will suffice ; the executrix is now before the court, so are all the parties in interest. A part of this controversy is the settlement of her account, filed as executrix of said estate ; it is opposed on various grounds, and among them I claim to be put down for the value of my services, which has been fully proved, and a judgment rendered on this issue is like a judgment rendered in the case upon any other of the issues made up, and how it can be construed into an allowance by the court, is incomprehensible to my understanding. Your honors have decided a very similar case in the Succession of Macarty, 3 A. 517, where the court said that the article 71, of the constitution of 1845, does not affect the right of an attorney or counsellor at law to recover the value of his services, in an action or in any other legal mode in which the parties may present their claim for adjudication. This claim is presented by way of a regular opposition to the homologation of an account ; it has not been excepted to, nor any regular defence set up against its payment. Full proof has been made of the value of the services ; and we submit whether we are not properly before the court for its final action on this question. There is an eternal rule of right—that the laborer is worthy of his hire. I ask no more. I have done my duty for an absent minor faithfully. If I am legally entitled to be paid for my services, I demand it ; if not, well and good. I would have done my best after being appointed ; any how, I believe, conscienciously, that the judgment of the lower court is erroneous—that if maintained the legacy to the minor is a fiction ; and, so believing, I have brought the case before your honors for revision. I now place the rights and interests of the minor in your keeping. Believing confidently that you will discharge your high and important duties as conscienciously as I have endeavored to discharge my humble duty in this case. Like wards in chancery, your honors will see that the minor receives no wrong.

W. D. Winter and Brewer & Collins, for defendant.

It is too well settled now to admit of argument, that there is no obligation in the usufructuary to pay the debts with which the property is burthened, or for which it is liable from the revenues of that property. The right of the surviving spouse in the enjoyment of the usufruct, under the act of 1844, to have a sufficiency of the property sold to pay the debts, is firmly established. C. C. 574, '76, Cecile, f. w. c. v. Lacoste and others, decided in January last ; Succession of Fitzwilliams, 3 A. 489 ; Succession of Bringier, 4 A. 389.

In a sale of succession property in which minors are interested, made to pay debts, the formalities required by law in alienations of minor's property need not be observed. The heirs, whether of age or minors, have only a residuary interest in the estate, attaching to what remains after paying the debts. They can only avoid the sale to pay the debts by advancing the necessary amount to liquidate them.

As to the claim of the attorney for his fee for his professional services, it is not contended that the amount claimed ($500) is excessive, but we think it was properly disallowed. Constitution of 1845, art. 71; *Succession of Ashbridge*, 1 A. 206; *Succession of Roland*, 1 A. 22. If allowed at all, it cannot be allowed against the mass of the succession. If due at all, it is only due by the absentee whom the counsel represents, and to him he must look for payment. It is difficult to see how a judgment can be rendered against him in this proceeding. How can *Mr. Ratliff* individually obtain judgment against *Mr. Ratliff* curator, and how could such a judgment be executed? Although this seems the most labored point in the counsel's brief, we will leave it with the remark, that in behalf of the executrix, we only oppose its being allowed as a claim against the succession.

*U. B. & E. Phillips,* for *Dr. Lyle.*

*Dr. W. J. Lyle* instituted suit against *Mary A. Smith*, testamentary executrix of *Dr. Ira Smith*, deceased, for the sum of $9,059 46, being one-half the nett proceeds of the crop made on "Smithfield plantation" in the year 1850. This amount was claimed by virtue of an agreement made by him with *Dr. Ira Smith* to that effect.

The executrix contested the claim, and set up various matters in defence.

The contract was fully found, and judgment was rendered in favor of *J. W. Lyle* for the sum of $8072 63.

During the pendency of this suit, the executrix filed an account of her administration, and put down $10,000 as being reserved in the hands of *A. Miltenberger & Co.*, out of the crop of 1850, made on the Smithfield plantation, to satisfy whatever judgment might be rendered against her, and in favor of *Dr. Lyle* in this suit.

This item was opposed by the absent minor, *Ira Smith*, by his attorney at law, *Cyrus Ratliff*, as follows:

"This opposer objects to *Dr. Lyle's* claim for any portion of the money said to remain in the hands of *A. Miltenberger & Co.*, and denies his right to the same, and will, on the trial, require strict and legal proof, and on the trial of this opposition."

This opposition was filed on the 23d December, 1851, the same day on which the suit of *W. J. Lyle* v. *Mary D. Smith*, testamentary executrix, was tried and judgment pronounced. The attorney who filed the opposition for the minor was present at the trial, though there is no formal appearance of his in the suit. It is contended that the judgment rendered in the suit of *W. J. Lyle* v. *Mary D. Smith*, testamentary executrix, cannot be inquired into in this proceeding. The executrix had seizin of the estate, and there is no allegation or charge of fraud or collusion. It was a personal action, and a judgment against the executrix was conclusive on the heirs. C. P. 123; 8 Rob. 497; *Succession of Durnford*, 3d Ann. 36; *Succession of D'Aunoy.*

The only way in which the validity of the judgment in favor of *W. J. Lyle* can be inquired into, is by appealing from the judgment in his favor, before referred to.

VOORHIES, J. On the fifth of December, 1851, Mrs. *Mary Ann Smith*, as testamentary executrix of the last will of her deceased husband, *Ira Smith*, filed in the court where his succession was opened, an account of her administration, showing in detail the receipt and disbursement of $35,620 36, and the reservation of $10,000 out of the proceeds of the sales of the crop of sugar and molasses made upon the Smithfield plantation in 1850, in the hands of *A. Miltenberger & Co.*, to abide the decision of a suit instituted against her, in her representative capacity, by *Dr. William Jones Lyle*, in which the latter claimed the ownership of one half of said crop; and also filed therewith a statement showing the outstanding debts, which amounted to the sum of $49,510 62, exclusive of the sum of $5000 as the probable amount required to defray the future expenses of the administration. In her petition, praying for the usual order of notice and for the homologation of her account, she al-

leges, among other things, that the legacy under a particular title, bequeathed
to *James Bowman*, inventoried at $300 00, is the only legacy which has been
discharged under the will; that she claims under said will the usufruct of the
entire estate, during her life time, without waiving, however, the usufruct of
one half of the community which she claims under the Act of 1844, in the
event of the nullity of said will; that in order to pay the outstanding debts
and costs of administration, it becomes necessary that the entire personal pro-
perty, and a sufficient number of slaves belonging to the community, should
be sold for cash; that according to the request of her husband on his death
bed, she caused to be procured a tomb for his remains at an expence of $3500,
which should be paid out of his separate estate, and for that purpose, a suf-
ficiency thereof should be sold for cash; that the heirs at law and several of
the legatees named in the will, are represented as absentees by *Cyrus Ratliff*
and *A. D. M. Harraldson*, Esq'rs, attorneys at law, under the appointment of
the court; and that the other legatees concur in the prayer of their petition.
She, therefore, prays that said attorneys be cited to answer her petition; that
after due proceedings had, said account be homologated; that she be author-
ized to pay the debts due by the estate, as set forth in her petition and state-
ment; that there be set apart to her one hundred and twenty-three head of
cattle, six and a half yokes of oxen, forty-five head of sheep, and two hundred
head of hogs, to replace the stock brought by her into the community; that
a sale of the property as aforesaid be made for cash; and that a sufficient
number of slaves, as the separate estate of the testator, be sold for cash to
pay said sum of $3500.

*Cyrus Ratliff*, Esq., attorney for the absent légatee, *Ira Smith*, appeared
and opposed the homologation of the account, and also the prayer for the sale
of the property, on the grounds, amongst others, that the sale of the real
estate and slaves would be in violation of the provisions contained in the will;
that there existed no necessity to sell any part of the property and effects be-
longing to the succession, as the revenues thereof would be sufficient in two
years to pay all the debts, none of which being pressing, as shown by the ex-
ecutrix; but if such sale were necessary, he then prayed that a family meeting
should be called to determine what part of said property should be sold least
injurious to the interest of the minor, *Ira Smith*, whom he represented; that
if said executrix had any claim to paraphernal funds, which he denied, it was
intended that the same should be refunded out of the revenues of said estate;
that said executrix was indebted to the community in the sum of $15,000 for
improvements made on her separate or paraphernal estate; that the claim of
Mrs. *Sarah Sterling* was barred by prescription; and that he was entitled to
be placed on said account as a creditor for his fee for professional services ren-
dered to said absentee. He also opposed the correctness of the claims of sev-
eral of the other creditors, carried on the statement filed by said executrix.

The District Court dismissed his opposition, except as to the claim of Mrs.
*Sarah Sterling*, and gave judgment in favor of the executrix for the sum of
$17,974, with interest and right of mortgage, for the reimbursement of her
paraphernal effects alienated by the testator, and also for a certain number of
cattle, oxen, sheep and hogs, in kind, which she had brought into the commu-
nity, and ordered the sale of the property as prayed for. The opponent is ap-
pellant from the judgment thus rendered, and claims its reversal on the follow-
ing grounds, to wit:

"1st. The first clause of the will provides for the payment of the debts, out of the proceeds of the testator's estate, which must be carried out.

"2d. The will expressly prohibits the sale of his real property by the executrix, or to make titles thereto, unless it be necessary to pay the debts that the testator says, 'I now owe.'

"3d. There is no showing that a sale of the estate, or any portion, was demanded by the creditors, by suit or otherwise.

"4th. The debts, set out in the petition, are not such as would authorize a sale of the property under the will, to wit: The claim of *A. Miltenberger & Co.*, dates after the death of *Dr. Smith*, and is made out against the estate. The claim of Mrs. *Mary Ann Smith*, for the repayment of her paraphernal rights, cannot be demanded until a final settlement and liquidation of the community debts, as she has not renounced the community.

"5th. The claim for the erection of a tomb is a debt contracted since his death, and the testator only permitted his property to be sold if necessary to pay debts he actually owed at his death.

"6th. The claim of $5000, as the probable expenses of settling the estate, is an expense not yet entirely incurred ; a sale of the estate for future expenses was not contemplated by the testator, and for such debts the executrix cannot cause property to be sold and make title. The expenses of settling the estate, if there are not sufficient funds, must be taken from the sale of the personal effects first.

"7th. No family meeting was ordered by the court *à quo*, nor held for the purpose of determining upon what property, if a sale was necessary, could be most advantageously sold, with the least injury to the minor ; and to fix the terms of sale.

"8th. The court erred in not sustaining the claim of the attorney for the absent minor of $500 for professional services."

1st. The usufruct in this case is governed by the rules prescribed by our Code, on the same subject. The rights of the widow as usufructuary, either under the will or the Act of 1844, stand unaffected by her appointment as testamentary executrix ; neither are her rights as surviving partner in community controlled by the dispositions contained in the testator's will. At the death of the testator, her rights were fixed by law ; as survivor, she could either sell a sufficient amount of community property to discharge the debts, and exercise her right of usufruct on one-half of the residue, or retain the whole property, and receive its fruits, on paying the debts herself, so as to relieve the heirs from the burthen of interest. Were it obligatory on the usufructuary to discharge one-half of the community debts and legacies, out of the revenues of the separate estate of the testator, as contended for by the appellant, it is obvious that her right as such would be suspended to an indefinite period, indeed, might ultimately be defeated. The interpretation contended for, is clearly in opposition to the terms of the statute, and in conflict with the rules which govern usufructs. C. C. 578 and 579. 3d Ann. 491. 4th Ann. 394.

2d. The answer to the first objection is applicable in part to this one. The property ordered to be sold for the payment of the community debts, consisted only of slaves and movables. We have carefully examined the evidence as to the necessity of the sale, and are not prepared to say, that the Judge *a quo* erred. The claims of *A. Miltenberger & Co.*, amounting to $25,656 09, balance due them after deducting partial payments, and of the widow, for $17,934,

amount of her paraphernal property, alienated during the marriage, appear to us to be fully sustained by the evidence. Indeed we think the evidence disclosed by the record, shows most conclusively, that the debts of the community, including the claims for a tomb, costs of administration, etc., amounted to upwards of $50,000, at the date of the order given for the sale of the property.

3d. The answer to this objection, is to be found in the provisions of our Code, prescribing the duties of curators, administrators and executors. "In default of funds sufficient to discharge the debts and legacies of sums of money, the testamentary executor shall cause himself to be authorized by the court, to sell the movables and the slaves not employed on plantations, and if they are insufficient, the immovables, to a sufficient amount, to satisfy those debts and legacies." C. C. 1661, 1662, 1663, 1155, 1156–7. C. P. 990 *et seq.*

4th. We are of opinion that this objection is wholly unsupported by the facts contained in the record.

5th. It is clear that the claim for the erection of a tomb, cannot be received as a debt of the community, and must consequently be borne by the estate of the testator.

6th. Considering the nature and amount of the succession, and the various proceedings which must necessarily take place in the course of its administration, we are under the impression that the amount provided for to meet contingent or future expenses, is not only proper, but reasonable.

7th. In the sale of property belonging to a succession in which minors are interested for the payment of debts, it is not necessary to observe the formalities required by law for the alienation of minors' property, the interest of such minors being considered merely residuary. 11 R. 508. 17 L. 500. 10 R. 457. 11 L. 156.

8th. The allowance of the claim of the appellant for his fee, for professional services rendered to the absentee in this suit, would have been, in our opinion, in contravention of the 71st Article of the Constitution of 1845. The claim is clearly not within the exception provided for in that Article. 4th Ann. 436. 1st Ann. 206, 22. The right of the appellant to claim compensation for his services from the estate of the minor, is reserved by the judgment.

*James L. Stirling,* one of the creditors and appellees in this case, complains that the Judge *a quo* erred in rejecting his claim, on the ground that it was prescribed, and asks that the judgment be amended in his favor. He claimed to be a creditor of the testator for the sum of $3,358 15, besides interest. The testator died on the 24th December, 1850. On the 15th of January, 1851, the executrix acknowledged the correctness of his claim and promised to pay the same, concurrently with the claims of the other creditors, in the course of administration. It appears that subsequently, she paid on account of the same, $2,873 04, leaving a balance of $600, in his favor, which is the amount contested. Our attention has been directed to an account rendered by the testator in April, 1842, showing a balance of $758 66, in favor of *Stirling.* It also shows a note of *McDermott* charged to him, but the amount of which is not specified, and a memorandum at the foot of it, in these words: "I have paid to *Watts,* and *Lobdell,* and *Eustis,* and expenses incurred in the suit of *Ehs. McMicken* v. *Amos Webb* and heirs of *Jedh. Smith,* about $1600, which is not charged, the suit not being yet determined." *Catherine Smith,* wife of *Dr. W. J. Lyle,* and *Sarah Smith,* wife of *J. L. Stirling,* were the only heirs of *Jedh. Smith,* issue of his marriage with the executrix, and legatees under the will.

In the account thus rendered, *Stirling* stands credited with the following items: **SUCCESSOIN OF IRA SMITH.** "By amount of *Sarah's* half of estate of *Mrs. P. Smith*, $1500. By amount due *Sarah*, as per settlement with *L. Stirling*, under-tutor to heirs of *Jedh. Smith*, $6,868 55." If debited with his wife's proportion of the amount thus paid for the heirs of *Jedh. Smith*, it is evident that the balance would be on the other side. The credit side of the testator's account is relied on by *Stirling*, and so charged in his account. The only items charged in his account, since April, 1842, amount to $3,344 16, and the credits to $3637 62, including the amount received by him from the executrix. Thus it would seem that his claim against the estate is not so clear and certain as to authorize us to disturb the judgment of the District Court, even supposing that the plea of prescription was unavailable.

We are of opinion in relation to the claim of *Dr. W. H. Lyle*, established by a judgment rendered in his favor against the executrix, that it cannot be examined in this case. C. P. 986, 987. 9 Rob. 78. 3d Ann. 36.

It is therefore ordered, adjudged and decreed, that the judgment of the District Court be affirmed.