## A. E. CARTER *v.* T. H. McMANUS et al.

<div style="float:right; text-align:center; font-family:monospace">
15 641<br>
48 518<br>
――――<br>
15 641<br>
51 645<br>
――――<br>
15 641<br>
f52 1916<br>
――――<br>
15 641<br>
106 300
</div>

The rules which regulate the sale of the property of minors do not apply to sales of succession property made at the instance of administrators for the payment of debts, and consequently the sale of succession property for the payment of debts may be made for less than the appraised value in the inventory, and such sale must be held valid and binding upon the minor heirs as well as upon heirs of full age ; where a succession is accepted with the benefit of inventory, no law requires that the property shall produce its appraised value, nor that a re-appraisement shall be made in case the first estimation shall not be obtained. In such cases, sales, made in the manner provided by law for sales under execution, will be valid, if thus ordered and approved by a decree of the court.

Where the administrator of a succession is the surviving partner in community of the deceased, he has the same right to purchase at a sale of the effects of the succession, as any disinterested third person has, and a purchase made by such administrator is as valid and binding on the heirs, whether minors, or of age, as if made by any third party.

Where a forced heir sued to set aside a sale, made by his ancestor, upon the ground that it was a *disguised donation* and operated to his injury—*Held:* That the burden of proof was on him to show, that no price had been paid for the property, or that the price was below one-fourth of the real value of the property, at the time of the sale.

Where the evidence in such a case is so slight as to create but a suspicion against the payment of the price, and to make out in favor of the heir but a doubtful case, it is too uncertain to justify the court in setting aside the sale.

APPEAL from the District Court of the Parish of East Feliciana, *Ratliff*, J.
A. M. *Dunn*, and *Hardesty & Kernan*, for plaintiff and appellant. J. & C.
*McVea*, for defendants.

LAND, J. The plaintiff is the grandson, and the defendant, *T. H. McManus*, is the son of *Samuel* and *Sarah McManus*, deceased. The plaintiff, who sues the executors of *Samuel McManus*, has cumulated in his petition several separate and distinct demands against them, and also other demands against *T. H. McManus* individually.

These alleged causes of action may well be considered in the order in which they are set forth in the petition.

The plaintiff's first demand is to have certain slaves declared community property as between *Samuel* and *Sarah McManus*, and to have his right, as heir to his grand-mother, to an undivided interest in the slaves, recognized and enforced in the settlement and partition of the succession of *Samuel McManus*. This claim is without any foundation. The evidence establishes that the slaves

were the separate property of *Samuel McManus*, and were owned by him before his removal from the State of Mississippi to this State.

The plaintiff's second demand is, to have the judgment homologating the final account and schedule of debts filed by the administrator, in the succession of *Sarah McManus*, declared null and void, on the ground of the want of citation, and of fraud on the part of the administrator, in allowing and placing on the schedule or tableau of debts, unfounded or invalid claims against the succession.

The want of citation is not proved, as alleged. But, on the contrary, the evidence shows that the plaintiff's tutor (he being a minor) was personally cited, to show cause why the account and tableau should not be confirmed by a decree of the court, and that his tutor made no opposition to the homologation prayed for by the administrator.

As respects the charge of fraud, alleged as one of the grounds for annulling the judgment, it is only necessary to say, that there is no evidence in the record to sustain it.

The plaintiff's third demand is, to have the probate sale of the personal property in the succession of *Sarah McManus* declared null and void, on the ground that the property was sold for cash for less than its appraised value in the inventory, and on the further ground, that the administrator, *Samuel McManus*, was a purchaser at the sale, contrary to law.

In respect to the first of these grounds, it has been repeatedly held, that the rules which regulate the sale of the property of minors do not apply to sales of succession property, made at the instance of administrators, for the payment of debts. And as a consequence of this ruling, it has been held that the sale of succession property for the payment of debts may be made for less than the appraised value in the inventory. And, as a further consequence of the same ruling, such sales must be held to be valid and binding upon minor heirs, as well as upon heirs of full age; for, in estates accepted with the benefit of inventory, no law requires that the propery shall produce its appraised value, nor that a re-appraisement be made in case the first estimation shall not be obtained. The heirs, whether minors or of age, have, at best, but a residuary interest in such estates, which can be ascertained only by a full administration. In such cases, it appears that sales made in the manner provided by law for sales under execution, will be valid, if thus ordered and approved by a decree of the court. See *Valdere* v. *Byrd*, 10 Rob. 396; *Richard* v. *Duel*, 11 Rob. 508; *Succession of Ogden*, 10 Rob. 457.

In regard to the second of the grounds alleged as a sufficient cause to avoid the sale, it is only necessary to observe that the administrator was the surviving partner in community of *Sarah McManus*, and had the same right to purchase at the sale of the effects of the succession, as any disinterested third person had, and that the purchase made by the administrator was as valid and binding on the heirs, whether minors or of age, as if made by any third party. See Acts of 1840, p. 123; Phillip's Digest, p. 3, sec. 8.

Plaintiff's fourth demand is, to have two notarial acts of sale from *Samuel* to *Thomas H. McManus*, passed respectively on the 6th of December, 1841, and on the 21st of December, 1842, declared null and void, on the ground that they are disguised donations, and operate to the prejudice of the plaintiff's legitime.

The sale of the 6th December, 1841, purports to have been made for six thousand three hundred and fifty dollars in cash paid, and whether the plaintiff, as one of the forced heirs of *Samuel McManus*, can avoid this sale, depends entirely on

the sufficiency of the proof which he has made. The burden of proof was imposed upon him by Art. 2419 of the Civil Code, and the plaintiff was bound to prove that *no price had been paid for the slaves by Thomas H. McManus*, or that the *price was below one-fourth of the real value of the slaves at the time of the sale*, in order to make out his case, and to avoid the sale, as a disguised donation.

For the purpose of proving that no price had been paid, the plaintiff seeks to establish that *Thomas H. McManus* was without the means of purchasing the slaves. The testimony shows that *Thomas H. McManus* had lived with, and acted as overseer for his father, on his plantation, after he attained his age of majority, some five years immediately preceding the sale of the 6th of December, 1841, and had owned in his own right, for the same period of time, property in slaves capable of producing a revenue. With the proceeds of his own labor, and the revenue of his own slaves, *for a period of five years*, it cannot be affirmed that *Thomas H. McManus* was entirely destitute of means, and that he paid no price for the slaves, or that the price was below one-fourth of their real value at the time of the sale.

The sale of the 21st of December, 1842, was made on a credit of one, and two years, and promissory notes were given for the price, which were carried into the succession of *Sarah McManus*, and accounted for by *Samuel McManus* as community property. The plaintiff has not proved that this sale was a simulation, as he was bound to do, in order to avoid its effect as to himself, one of the forced heirs of the vendor.

The District Judge came to the conclusion, that these sales were donations in disguise, and stated the grounds on which that opinion was founded. These facts, which influenced the mind of the District Judge, are entirely circumstantial in their nature, and are not necessarily inconsistent with the fact of payment of the price by *Thomas H. McManus*. These circumstances, at most, create but a suspicion against the payment of the price, and make in favor of the plaintiff but a doubtful case. *Such evidence is too uncertain* to justify the courts in taking an estate from one man, and declaring it to be the property of another.

The plaintiff's fifth demand is against *Thomas H. McManus* for the sum of ten thousand dollars, which he alleges *T. H. McManus* received as a loan, in the name of his father, from the Union Bank, and converted to his own use. This claim is unsustained by the evidence.

The plaintiff's sixth demand is against *T. H. McManus* for the proceeds of the crops of 1841, 1842 and 1843, made on his father's plantation; which crops. the plaintiff alleges, *T. H. McManus* received, and converted to his own use. This claim is likewise unsustained by the evidence.

The plaintiff's seventh and last demand is, to have the sale of the land in the succession of *Sarah McManus*, declared *an act of mal-administration*, and the executors of *Samuel McManus* condemned in damages for the same.

The land was encumbered with a mortgage in favor of the Union Bank, and, instead of being offered in the first instance for cash, it was offered and sold on a credit of twelve months, and *Samuel McManus* became the purchaser at two-thirds of its appraised value. The plaintiff has failed to show that he was injured by this sale; and where there is no injury, there is no mal-administration, for which an action in damages will lie.

The evidence, however, shows that the crop of cotton and corn of the year 1842, which belonged to the community which existed between *Sarah* and *Samuel McManus*, was not inventoried nor accounted for by the administrator; and as

this evidence was received without objection, it entitles the plaintiff to a judgment against the defendants as executors of *Samuel McManus.* The net value of this crop is shown to have been four thousand and seventy-five dollars, for one-half of which the plaintiff is entitled to a judgment against the defendants.

The evidence also shows, that there were one hundred and thirty-seven shares of the capital stock of the Union Bank, which belonged to the community, and which were not inventoried or accounted for by the administrator. This stock was worth four thousand three hundred and eighty-four dollars, for one-half of which the plaintiff is also entitled to a judgment against the succession of *Samuel McManus.*

The evidence further shows, that a debt due the community by *Robert Fluker,* amounting to the sum of fifteen hundred and twenty dollars, was not inventoried nor accounted for by the administrator. The succession of *Samuel McManus* is likewise responsible to the plaintiff for one-half of this debt, less the sum of seventy-six dollars, one-half of the commissions for collecting the same.

For the reasons assigned, it is ordered, adjudged and decreed, that the judgment of the lower court be annulled, avoided and reversed, and that the demands contained in the plaintiff's petition be rejected as in case of nonsuit; and it is now ordered, adjudged and decreed, that the plaintiff recover of the defendants, the executors of *Samuel McManus, upon the evidence adduced,* the sum of two thousand and thirty-seven dollars and fifty cents, with interest thereon at the rate of five per cent. per annum from the 5th day of February, 1858; and that plaintiff recover from said executors the further sum of two thousand one hundred and ninety-two dollars, with interest thereon at the rate of five per cent. per annum from the 5th day of February, 1858; and that the plaintiff recover from said executors the further sum of seven hundred and sixty dollars, less the sum of seventy-six dollars, with interest on the same at the rate of five per cent. per annum from the 5th day of February, 1858; and it is further ordered and decreed, that the defendants pay the costs of the lower court, and the plaintiff pay the costs of this appeal.

MERRICK, C. J., having been of counsel for the administrator of the succession of *Sarah McManus,* declined sitting in this case.