The opinion of the court was delivered by
Monroe, J.
This matter comes before the court upon an appeal from a judgment making absolute a rule taken by an adjudicatee to a*Lnul an adjudication of real estate and compel the return of the amount-deposited by him.
The following statement of facts, agreed on by the parties respectively, which we reproduce in substance, appears in the records, to-wit:
Mrs. Tillie Loeb, wife of Abraham Yarutzky, died in New Orleans, January 12, 1896, leaving two minor children as sole issue of her marriage. Pier succession was opened January 30th, 1899, by her surviving husband, who qualified as natural tutor of the minors and caused an inventory to be taken, which showed, as the only asset of the succession, an undivided half interest in improved real estate, in New Orleans, valued at $2,000.00, -which had been acquired as community property, and of which the surviving husband and tutor owned the *1914 other half interest. The succession was administered by Yarutzky, as tutor, and no administrator was appointed. In February, 1899, the tutor obtained an order of court to sell the property of the succession, to pay the fees of the attorney, notary and appraisers, and the costs of court, incurred for the purposes of the succession. The order was made without the advice of a family meeting, and directed that' the sale should be made for one-third cash and the balance on time, and the real estate in question, in March, 1899, was adjudicated to Switzer, the plaintiff in rule, for $2,375.00. In April following, Yarutzky, as tutor, presented a petition, alleging that, in addition to the debts stated to be due when the order of sale was made there were also due, as privileged debts, $45.00 for paving, and $175.00 for taxes, and praying that a family meeting be convened to deliberate upon the question of ratifying the sale; and there was an order for such family meeting, but the same was never held. In May, 1899, Abraham Yarutzky died, leaving a will whereby Joseph S. Loeb and Leonard Krower were appointed his executors, and his succession was opened, the will probated, the executors qualified, and an inventory duly taken. This inventory, filed June 12, 1899, showed assets amounting to $9,112.80, of which $7,500.00 was in life insurance. Thereafter, the succession of the husband and wife were consolidated, and Joseph S. Loeb applied to be appointed testamentary tutor of the minors, and for an inventory of their estate. The inventory, so taken, shows assets valued at $13,300.30, of which all but $2,375.00 consist of personal property, most of it cash, or its equivalent. Loeb, having qualified as testamentary tutor, presented a petition asking to be allowed to pay certain attorney’s, notary’s, and appraisers’ fees, and costs of court, amounting to $161.00, as debts of the succession of Mrs. Yarutzky, and the order prayed for was made, and, at the same time, the executors of Abraham Yarutzky applied for, and obtained, an order to pay certain debts due by his succession, amounting to $628.50, alleging that there was on hand a cash surplus, over and above said debts, which the petitioners believed included all the obligations of the succession. Thereafter, they obtained an order to pay certain legacies, amounting to $3,150, including $1,000, given to one of the minors as an extra portion, and, on the same day, October 27, 1889, Joseph Loeb asked that a family meeting be convened to deliberate as to the ratification of the sale to Switzer, and obtained the order, as prayed for. On November, 20th, Switzer took the rule which is now under considera *1915 tion, to cancel the adjudication and compel the return of his deposit. On November 21st, the family meeting convened and recommended the ratification and completion of the sale, and on December 7th, the proceedings were homologated, and, finally, on December 18th, the rule taken by Switzer was made absolute, and from this judgment the appeal which we are now considering was taken, on behalf of the Succession of Mr. and Mrs. Yarutzky.
The proposition upon which the adjudicatee relies, in rejecting the title,, and upon which the rule to cancel the adjudication is based, and was made absolute, is, that the mission of the tutor is to administer the estate of the minor, but that it is incompetent for him to sell, or to provoke the sale of the minors’ property without the advice of a family meeting, and hence that the adjudication in question was illegal and void, and that its defects were not cured by the subsequent ratification by the family meeting.
It is not claimed that the succession of Mrs. Yarutzky owed anything whatever at the moment of her death, in January, 1896. The only asset consisted of the interest of the deceased in the one piece of real estate, which had belonged to the community, and of which the surviving husband was entitled to the usufruct. When the succession was opened in January, 1899, three years after Mrs. Yaxutzky’s death, and the surviving husband, as natural tutor of the minors, asked that said property be sold, he represented that such sale was necessary to pay the debts of the succession, specifying appraisers’ fees $10.00, notary’s fee, for taking inventory, $25.00, costs of court and recorder, about $25.00, fee.of attorney, $75.00, being a total of $135.00. The situation, then, was, that the succession had fallen to the minors, and was subjected to the administration of the tutor as something belonging to them. The debts mentioned were incurred in the course and for the purposes of that administration, and, in the opinion of the tutor, it became necessary that the real estate, of which alone the succession consisted at the moment that it was opened by the death of the deceased, should be sold to pay the debts thereafter contracted.
The authority and the obligations of the tutor, under such circumstances, are regulated by specific provisions of law, which confer upon him power to administer and positively prohibit the sale of immovable property belonging to his wards save upon the recommendation of a family meeting. C. C. 336, 337, 339, 340, et seq.
*1916 This question was fully considered in the Succession of Weber, 16th Ann., 420, where succession property had been sold at the instance of the tutor, under order of court, to pay debts, but without the advice of a family meeting1, and the adjudieatee, as in this ease, refused to accept title. The court said that there were several objections to the validity of the proceeding, and that the first — the failure to call a family meeting — was conclusive. In refusing the rehearing, Chief Justice Merrick, as the organ of the court, stated the legal proposition involved as follows, to-wdt: “ The law accepts for the minor any succession which “ falls to him, with the benefit of inventory. If, therefore, there should “ be found, in the patrimony of the minor, a succession, the tutor may “ administer it, not because it is so written in the letters of tutorship, “ for such express authority cannot there be found, but because the “ succession is an effect, a thing, belonging to the minor, and, therefore, “subject to the administration of the tutor for the ultimate advantage “ of the minor. * * * the Civil Code * * * makes the convocation of a family meeting necessary to the administration of a '“ minor’s lands or slaves,” etc.
Counsel for defendant in rule refer us to a number of cases, the opinions and rulings in which are said to conflict with the views thus expressed, and, among them, several which are referred to by the court in the case cited, and differentiated from it, as cases in which sales were made in successions administered by executors or administrators, or were provoked by creditors, and, it was held, were governed by the provisions of Articles 990, 991, 992 C. P., and 1155, 1156 (1164, 1165) C. C.
Thus, in Bryan vs. Atchison, 2nd Ann., 462, a judgment was obtained against a succession contradictorily with the tutrix, administering, and the property was sold by order of court to pay the judgment thus obtained.
In Succession of Ira Smith, 9th Ann., 107, the testamentary executrix filed an account, showing debts due by the succession, and obtained an order to sell property to pay them.
In Michel vs. Delaporte, 14th Ann., 91, the property was sold at the instance of an administrator.
In Carter vs. McManus, 15th Ann., 642, the sale attacked was made at the instance of an administrator, and the courts said:
“ It has been repeatedly held that the rules which regulate the sale of “ the property of minors do not apply to sales of succession property, *1917 “ made at the instance of an administrator for the payment of debts.”
The other eases relied on by the learned counsel may be summarized as follows:
Towles vs. Weeks, 7 La., 312:
The estate was insolvent, and the sale was made at the instance of the tutrix, based upon the action of a meeting of the creditors, and upon the recommendations of a family meeting, held on behalf of the minors. The main question was, whether, the estate being administered as an insolvent one, the property could be sold for less than its appraised value, with the consent of the creditors.
In Poulteney’s Heirs vs. Cecil’s Executor, 8 La., 412:
The estate was insolvent, the widow renounced, and the property was sold, under order of court, by syndics appointed by the creditors.
Valderos, Executrix, vs. Bird et al., 10 R., 396:
The sale was made at the instance of a curator for absent heirs, regularly appointed to administer the succession, after a hearing contradictorily with an attorney appointed to represent the absent heirs, and for the purpose of paying debts.
Richard, Administrator, vs. Deuel et al., 11 R. 518:
The court said: “ The question which this case presents is whether “ the provisions of the Civil Code in relation to the sale of property be- “ longing exclusively to minors apply to, and must govern, sales made by “ administrators of estates, whether solvent or insolvent.”
Davidson vs. Davidson, 28 Ann., 269:
A sale of succession property was made at the instance of an administratrix to pay debts.
Succession of Tabor, 33rd Ann., 344:
The succession was administered by an executor, and it does not appear that there were any minors interested.
Succession of Hood, 33rd Ann., 466:
The court said: “ The question presented for solution is, can the im- “ movable property of a succession in which minors are interested and “ which is ordered to be sold to pay debts, at the instance of the adminis- “ trator, be adjudicated at the first offering for less than the appraise- “ ment in the inventory, and on any other terms than cash?”
Nesom vs. Weis et al., 34th Ann., 1008:
The property was sold at the instance of an administrator, to pay debts.
*1918 Succession of Merrick, 35th Ann., 296:
The surviving husband was administering the succession of the deceased wife, as natural tutor of their children. He claimed to be a creditor of the community, to the extent of about $15,000.00, and presented a petition, alleging that the community was insolvent, that it was necessary that its property should be sold for the payment of its debts; and praying that the undertutor be required to show cause why such sale should not be made. It is true that the court there said: “The repre- “ sentative of a succession may sell community property to pay its debts, “ upon proper showing of the necessity therefor, even though minors have an interest therein.” And, it is also true that the language thus used was applied to a case where a tutor was administering. But the community, to pay the debts of which the sale was to be made, was insolvent, and the tutor himself was a large creditor, and the court said, upon that subject: “As such creditor, he is entitled, like any other “ creditor, to have the community property sold in satisfaction thereof”; so that the sale was ordered upon the application of one who appeared in the double character of creditor and tutor.
Munday vs. Kaufman, 48th Ann., 591:
A succession was under the administration of an executor, who was also tutor of a minor heir. As executor, he presented a statement of the assets and liabilities and prayed for an order to sell property to pay debts. He, also, prayed for the convocation of a family meeting to advise as to the terms of payment of that portion of the price not needed for the purpose for which the sale was ordered. The family meeting was held and advised a sale for cash, and it was so ordered and so made. Being, subsequently, attacked in the interest Of the minor, the main question presented seems to have been, whether it was to be regarded as a sale of succession property, made upon the application of the executor, to pay debts, or a sale of minor’s property, made upon the advice of a meeting; — and the court held, after reviewing a variety of facts, that it was the former.
We are particularly referred to the case of Monget, Tutor, vs. Joseph Penny et al., 7 Ann., 134, as directly holding that the tutor, administering, is the representative of the succession. The question in that case was, whether the father and natural tutor could stand in judgment for the purposes of a suit brought against the succession of his wife, and it was held that he could do so. But the proposition as stated is not de *1919 nied. On the contrary, in the original opinion, in the Weber case, the court said: “ The creditors of Mrs. Weber had a twofold remedy; to “ proceed against the tutor in the usual way, or to provoke the appoint- “ ment of an administrator. Had the latter course been pursued, a “ sale, ordered at the instance of the administrator, would not depend “ for its validity upon the advice of the family meeting. * * * But “ if the creditors choose to let the tutor of the minors go on with the a administration of the succession, which had devolved upon them, with “ the 'benefit of inventory, by effect of law, it is necessary, then, to dis- “ tinguish at whose instance the sale is provoked, even for the payment “ of debts. If by the tutor, then the provisions of Articles 334, 335, “ 336 and 337 of the Civil Code govern the case, and the advice of the “ family meeting cannot he dispensed with. But, if by the creditor, then “recourse must be had to Articles 990, 991, 992 of the Code of Practice, “ and the services of the family meeting are not wanted.”
It will thus be seen that the decisions relied on by the defense (and there are some few additional ones of about the same value as those which have been noticed) do not present the conditions necessary to make them applicable to the case now under consideration, or to bring them into any sort of conflict with the ruling in the Succession of Weber, and as that ruling-is, in our opinon, predicated upon sound reasoning, applied to plain provisions of law, we adhere to and affirm it.
The adjudication, when made, not having been binding on the adjudicatee, there was no contract, and, whilst a subsequent ratification, by the vendors, might bind them, if the adjudicatee chose to accept it, it could not bind him without his consent, and thus force on him a contract where none had previously existed.
Cavallier (F. W. C.) vs. Germain, 6 La, 216.
The defendants’ counsel insist that, the tutor having an order from the court to sell property to pay debts, it must be presumed, in the absence of any direct attack upon such order, that the debts existed, that it was necessary to pay them, that there was no other means of paying them than by the sale of the property which was the subject of the order, and that, under such circumstances, the sale was properly provoked, and validly made, at! the instance of the tutor, and without the aid of a family meeting. And we are especially referred to the cases of Belard & Johnson vs. Gebelin & Duggan, 47th Ann., 162., and Munday vs. Kaufman, 48th Ann., 600. In the former case, the sale in question was *1920 made at the instance of an administrator, and, in the latter, as we have already seen, at the instance of an executor.
It may be remarked, in this connection, that cases are sometimes presented where the courts refuse to disturb long acquired rights, based upon proceedings which would have been set aside upon timely objections. But there is no such ease presented here. The plaintiff in rule makes his objection at the proper time, and invokes the plain provision of the law, and there are no considerations of equity to stand in the way of their application.
The judgment appealed from is, therefore, affirmed.