MONROE, J.
Plaintiffs, as the children and heirs of Irsael Deshotels, Sr., and Colas-tine Vizena, his wife, brought this petitory action to recover from the widow and heirs of Gustave B. Fontenot a tract of land containing 150 arpents, with the improvements thereon, lying in the parish of Evangeline; the facts relied on, as supporting their demand, being substantially as follows, to wit:
Israel Deshotels, Sr., acquired the land in question, included in a tract measuring about 200 arpents, as community property, from the United States government; and at his death, intestate, in 1899, his undivided half interest devolved upon his major and minor children. The widow appears to have been confirmed as natural tutrix of the minors, and, administering the succession without being appointed administratrix, she presented to the court a petition alleging that it (the succession) owed Gustave B. Fontenot $400, that he was pressing for payment, and that it was necessary to sell part of the property in order to pay the debt, and praying that a commission issue authorizing her so to do. The clerk of the court made an order, which was signed by the judge on April 19th following, authorizing the petitioner to sell 150 arpents of land, together with certain live stock and other movable property, and the land here in question was accordingly sold by her on April 20, 1899, at public auction to Gustave B. Fontenot for $410, and Fontenot thereupon went into possession, and (it is admitted) his possession and that of his widow and heirs has been open, notorious, and uninterrupted ever since.
The district court gave judgment for defendants, which was affirmed by the Court of *1055 Appeal. After granting a rehearing, the tribunal last mentioned, in reinstating its judgment as originally rendered, said:
“We have carefully reconsidered this casé, and have been unable to reconcile the conflicting decisions of the Supreme Court on the questions involved. We still believe that the weight of authority is with the defendants, sustaining the sale. It is therefore ordered that our former opinion and decree be reinstated.”
And, in view of the situation to which our learned Brethren of the Court of Appeal call attention, it has been thought advisable to bring the case to this court for review.
[1] The petition alleges that:
“Said adjudication [to Fontenot] could not, •and did not attempt to, adjudicate the interests of your petitioners Olivier Deshotels, Evea Deshotels, wife of Arsena Deshotels, Armillian Deshotels, Israel Deshotels, Jr., and Colastine Deshotels, wife of Doxy Manuel, for the reason that your petitioners above named were majors at the time and could act for themselves ; * * * that the said sale * * * was null * * * in so far as your petitioners Ernest Deshotels, Zelina Deshotels, wife of Elee Granger, Octave Deshotels, and Avie Deshotels •are Concerned, for the reason that they were then minors, and their property. could not be sold by their tutrix without complying with the •essential forms of law as to family meetings, •etc., which was not done; * * * that the said sale of petitioners’ property was provoked by the tutrix of the minors, without complying with articles 339, 340, 341, and 342 of the Civil •Code. * * *”
Defendants’ counsel with some reason, lias assumed that plaintiffs’ counsel have abandoned the ground of attack last above stated; but we do not so construe their action, •since counsel are not lightly to be presumed to hare abandoned any right of their clients which has been plainly asserted in their pleadings and is worth insisting upon, and plaintiffs’ counsel are still insisting that the ■sale in question should be set aside in toto, and plaintiff’s decreed to be the owners of .•an undivided one-half interest in the property described in their petition. There are some •other grounds set up in the petition, which we shall not consider, for the double reason that they have not been referred to by the counsel and that they appear, upon casual examination, to be without merit. We assume, since there is no evidence or suggestion to the contrary, that Israel Deshotels, Sr., and his wife were married under the regime of the community, and that the property found in his succession was community property. C. O. art. 2399; Succession of Pratt, 12 La. Ann. 457. We shall therefore address our inquiry to the present state of the jurisprudence, and the law, upon the question of the legal capacity of the widow in community, usufructuary, and natural tutrix of the minor heirs with respect to the administration and alienation of the community property, found in the succession of the deceased husband and father, where such property is burdened with community debts and the succession has fallen to minor heirs, conjointly with heirs of full age.
In furtherance of this inquiry, we have selected for consideration the following cases, as fairly illustrative of the past and present jurisprudence of this court upon the matters to be inquired into, and in considering them will endeavor to determine the correct rules of law to be applied in this case.
Erwin v. Orillion, 6 La. 212:
Certain major heirs, who had accepted with benefit of inventory, and minor heirs (for whom the law had so accepted), through their tutors, brought suit to recover a debt due to the succession which had fallen to them, and were met with the objection that they were without legal capacity to maintain the suit and that an administrator should have been appointed to represent the succession.
The court said (in substance) that it was “most probably” true that the appointment of an administrator was necessary, where the heirs were all of full age, no matter how the succession came to them, but that, under O. C. art. 327 (now 337), successions falling to minors could be administered by their tutors, *1057 and that the right of the tutors to sue for debts due such successions could not fairly be questioned. Coming then to the case before it, the court said that it presented greater difficulty and seemed not to be provided for by law; that “an estate accepted with benefit of inventory should be administered as an entire thing for the advantage of creditors and heirs until partition be made; that no one of the heirs who had attained majority, nor all of them, as heirs, were entitled to the administration of the succession” without authority derived from competent power ; “and where they are united with coheirs, who are minors,” the opinion continues, “and consequently under the protection of a tutor, it'appears to us to be the most reasonable and beneficial course that could be adopted to leave a succession thus situated to the administration of the tutor until partition. But, as the heirs of age are not represented by the tutor, in the event of suits to recover debts due to the succession, they should concur in the prosecution of such suits, as has been done in the present case.”
Poultney’s Minors v. Barrett, 6 La. 500: This was an action in which the plaintiffs, who were minors, “assisted by their natural tutrix and undertutor,” sued for the recovery of a lot of ground alleged to belong to the succession of their fáther. It was objected that they had not accepted the succession or been put in possession of it. The exception was maintained in the district court, and the judgment was reversed on the appeal, as being in contradiction to that rendered in the case of Erwin v. Orillion.
Self v. Morris, 7 Rob. 24:
Defendant, having been confirmed as natural tutor of his minor child, was sued as ex officio administrator for a debt alleged to be due by her deceased mother’s succession. The opinion of the court contains a résumé of the law applicable to successions, included in which is the. following:
“Whenever a succession is accepted with benefit of inventory (and minors cannot accept otherwise), an administrator must be appointed to settle it. * * * The tutor of the minors, in whose favor a succession is opened, has not, by virtue of his office, a .better right to administer upon it, without being appointed and giving security, than any other individual. . * * * ”
Succession of Ducloslange, 1 La. Ann. 181:
Said the court:
“Heirs of full age may accept, purely and simply, a succession .falling to them, take possession of it, pay its debts, if any exist, and make a partition of it among themselves, without the appointment of an administrator, or the intervention of the court of probates. It is true,” said the court, “the creditors may require an inventory and security from the heir who has accepted the succession unconditionally, and that, upon his failure to furnish the security, an administrator is appointed. * * * In the case of Erwin’s Heirs v. Orillion, 6 La. 212, the Supreme Court could not have intended to decide that a succession should, of necessity, be administered by an administrator or curator, even when accepted unconditionally,” e're,
Martin, Administrator, v. Dupré, 1 La.' Ann. 239:
Held, that where a succession, which is not in debt, has fallen to a major and to minor heirs, the tutrix and widow has power to administer it, with the assent of the major heir, may. provoke the sale • of its (movable) property, and authorize another person to receive the proceeds of such sale, and that a payment by a purchaser will release him when made to the person, so authorized.
Bryan v. Atchison, 2 La. Ann. 462:
Said the court:
“It is true that, under the dispositions of the Civil Code, when the heirs claimed the term to deliberate, an administrator was to be appointed in all cases; and when the succession was afterwards accepted under benefit of inventory, the administrator was to continue in his functions, and to settle and liquidate the succession. But the Code of Practice, subsequently adopted, provides that an administrator shall be appointed in such cases, if any of the creditors of the succession require it; and this we take to be the rule now in foree. * * * ”
It was accordingly held that successions are not, in all cases, required to be admin *1059 istered by ■ administrators, and that, in the case before the court, in which all the heirs were minors, their tutrix was competent to stand in judgment, so as to bind the heirs and creditors, for the purposes of a suit against the succession for the recovery of a debt due by it, and for the purposes of a proceeding by the creditor to compel the sale of succession property for the satisfaction of the judgment therein obtained, and other debts.
Succession of Story, 3 La. Ann. 502:
In this case it appeared that the succession was free of debt, but there were both major and minor heirs, and one of the major heirs, having applied for the appointment as administrator, was opposed by another and by the tutrix of the minors. The court said:
“The learned judge who decided this cause considered that the law was imperative, and left him no discretion as to the appointment of an administrator, under article 1040 [now 1047] of the Civil Code, which provides that:
“ ‘If there be several heirs to a succession, some of whom have accepted unconditionally, and others claim the benefit of the term for deliberating, the judge of the place where the succession is opened shall, notwithstanding, cause an inventory to be made of the effects of the succession, and shall appoint an administrator to manage them, until a partition of the same be made among the heirs. * * * ’
“But under our views of the law as stated in Atchison’s Case, and which a consideration of this before us has fortified, the district judge was not bound to appoint an administrator. The right of the heirs to an immediate partition cannot be questioned; it was insisted on by the appellant, and the administration, if carried out, could be little else than an impediment to the proceedings in partition.”
Labranche v. Trepagnier, 4 La. Ann. 558:
In this case it appeared that a natural tutrix had qualified and given bond, agreeably to the provisions of C. C. arts. 1037 and 1034 (now 1044 and 1041), and the court held that the bond was intended for the benefit of the creditors and (perhaps) the heir of age, and did not inure to the benefit of the minors, whose rights were secured by the tacit mortgage on the property of the tutrix. In the course of the opinion it was said:
“It was not unusual at the time of these proceedings, in some of the parishes of the state, to superadd the administration of a regularly appointed administrator to that of tutor, although the administration by the tutorship would have been legal and adequate of itself for all purposes. But we consider the law as settled that the natural tutor or tutrix has a right to administer the succession of the deceased spouse * * * unless the heirs of age or creditors require the appointment of an administrator. Bryan v. Atchison, 2 La. Ann. 462; Succession of Story, 3 La. Ann. 502.”
Monget, Tutor, v. Penny et al., 7 La. Ann. 134:
Plaintiff, as tutor, brought suit upon a note, which had been executed by Penny and his deceased wife, against Penny, individually and as natural tutor of the minor children of his marriage. It-was objected that the defendant minors were not responsible for the debts of their mother, inasmuch as they were merely beneficiary heirs, and that plaintiff should have caused an administrator to be appointed, against whom he should have brought his suit. Held, that plaintiff was not bound to cause an administrator to be appointed; that defendant, as tutor to his minor children, was the representative of the succession, and as such the proper party defendant to the suit.
Succession of Pratt, 12 La. Ann. 457 (quoting from syllabus):
“At the decease of husband or wife, all the property possessed by them is presumed to be community property until the contrary is shown. If the surviving wife expresses her willingness to pay all the debts, and no creditors desire it, an administration on the husband’s estate, so far as it concerns the community, is unnecessary. * * * The heirs of the husband should be .protected against the debts of the estate by requiring the wife to advance the money to pay them, or procure the release of the heirs from all liability for them.”
State v. Heirs of Leckie, 14 La. Ann. 641:
Said the court:
“The object of the suit is to obtain a judgment against the succession. Can the beneficiary *1061 heirs, as such, stand in judgment for the succession?' Have they, as such, the detention of the effects of the succession? Can they acknowledge debts? It appears to us, under our present jurisprudence, the answers to these questions must be in the negative. The Civil Code and Code of Practice contemplate the appointment of an administrator, in case the succession is accepted, with the benefit of inventory. C. O. arts. 1030, 1042 [now 1037, 1049]. This administrator, thus appointed, must give bond and take an oath of office, and thus he becomes quasi an officer of court, subject, in certain cases, to the summary rules and motions of parties and the penalties denounced by law. This could not be the case if beneficiary heirs could administer without these formalities. * * * "Where all the heirs are minors, represented by the tutor, this reasoning has not the same force, and the case is made an exception to the general rule, if the creditors do not require the appointment of an administrator. See Bryan v. Atchison, 2 La. Ann. 464; Succession of Story, 3 La. Ann. 502. * * * It seems to us quite clear that the exception of the defendants to their capacity to stand in judgment ought to have been maintained.”
Succession of Weber, 16 La. Ann. 420:
A lot of ground was offered for sale, at the instance of a tutor, administering a succession which had fallen to his wards, by order of court, and to pay the debts of the succession; but it does not appear that the debts to be paid were those of the community, or that the advice of a family meeting was obtained. The adjudicatee rejected the title and was ruled to show cause why the property should not be sold a la folie enchére.
“Several objections,” said the court, “are raised against the validity of these proceedings. * * * The first, which goes to the validity of the sale, we think conclusive; that is, the failure to call for the advice of a family meeting. The creditors of Mrs. Weber’s succession had a twofold remedy: To proceed against the tutor in the usual way, or to provoke the appointment of an administrator. Had the latter course been pursued, a sale ordered at the instance of the administrator would not depend, for its validity, upon the advice of a family meeting; the heirs having a mere residuary interest in the estate thus administered, the payment of the debts must be effected even without reference to the appraisement of the property to be adjudicated. This is the usual way of settling estates which are incumbered with debts. But if the creditors choose to let the tutor of the minors go on with the administration of the succession, which has devolved upon them with the benefit of inventory by effect of law, _ it is necessary then to distinguish at whose instance the sale is provoked. * * * If by the tutor, then the provisions of articles 334, 335, 336, and 337 [now 339, 340, 341, 342] of the Civil Code govern the case; and the advice of the family meeting cannot be dispensed with. But if by the creditors, then recourse must be had to articles 990, 991, 992 of the Code of Practice, and then the services of a family meeting are not wanted. Vide C. C. arts. 1155, 1156 [now 1164, 1165]; Michel v. Delaporte, 14 La. Ann. 91; Carter v. McMaumus, 15 La. Ann. 641; Bryan v. Atchison, 2 La. Ann. 463; Succession of Ira Smith, 9 La. Ann. 107; Domat, vol. 2, liv. iv, §§ 24, 25.”
In the same case, in the opinion upon the application for rehearing, Merrick, C. J., after comparing the ruling which had been handed down with that in Bryan v. Atchison, said:
“The question here is not, Can the tutor stand in judgment? but, Can he compel a purchaser to accept a sale where he, the tutor, has neglected the forms of law in provoking the sale, and where such irregularities may throw a doubt on the title? * * * That such a cloud rests upon the title tendered the purchaser, * * * we think will be made manifest by a few observations.
“The Civil Code and Code of Practice contain different rules for the guidance of the different sorts of representatives of successions. The heir pure and simple, the executor, .the administrator, the curator of vacant estates, the curator of absent heirs, and the tutor, while they have many duties in common, have others peculiar to themselves. * * * The mandate of the executor is primarily to see that the intentions of the testator as expressed in the will are carried out. The administrator is appointed to pay debts and deliver the estate to the heirs. The curator of a vacant estate must sell, pay debts, and pay residue into the state treasury. The mission of the tutor, as fixed by his appointment and the letters granted him, is to administer the estate of the minor. C. C. art. 327 [now 337]. He is the agent of the minor, and lie does for the minor what the latter might do for himself, if he were of the age of majority. The law accepts for the minor any succession which falls to him, with benefit of inventory. If, therefore, there should be found, in the patrimony of the minor, a succession, the tutor may administer it; not because it is so written in the letters of tutorship, for such express authority cannot be found there; but because the succession is an effect, a thing, belonging to the minor, and therefore subject to the administration of the tutor, for the ultimate advantage of the minor. Now, the Civil Code, article 334 [now 339], makes the convocation of *1063 a family meeting necessary to'tlie alienation of a minor’s lands or slaves. The undertutor must be present at such family meeting, and he may assent to the action of the family meeting, or he may oppose it. If he opposes it, and the court of the first instance decides against him, he may appeal. If he has this right when the tutor does his duty and observes the forms of law, who can say that he has no right to appeal because the tutor has proceeded irregularly ? * * * The formality of the family meeting required by article 334 C. C. [now 339], is# not an idle one. If the natural tutor, or tutrix, who gives no bond, could on a simple petition change the estate of the minors from immovables or slaves into money, the estate of the latter would be greatly jeopardized,” etc.
Soye v. Price, 30 La. Ann. 93:
• It appeared that Mrs. Amelia Nairne, deceased wife of George L. Nairne, had borrowed $2,500 from the plaintiff, and, being authorized by the court, had executed a mortgage to secure it; that she died, leaving three minor children, one, Miss M. A. Price (of a previous marriage), who was soon afterwards fully emancipated, and two by her marriage with Nairne, who caused an inventory to be made and was confirmed as their natural tutor. Thereafter, upon the advice of a family meeting, with the authority of the court, and with the concurrence of Miss Price, Nairne arranged for an extension of time upon the debt of $2,500, and in order to pay the interest thereon, together with taxes and premiums of insur.ance upon the property of the succession, borrowed an additional $1,000, and gave a mortgage upon other property of the succession for its security. The tutor and the emancipated heir, together with the minors, were in possession of the estate, and no administrator was appointed. Plaintiff proceeded, via ordinaria, in a court of ordinary jurisdiction, to foreclose his mortgage and to obtain judgment against Miss Price and the minors, renouncing any right against the latter on the $2,500 note, beyond the property inherited by them, and there was judgment in his favor, from which the minors appealed. ’ Their contention was that the claim on the $2,500 note should have been asserted in the probate court, and that the court in which the suit was brought was without jurisdiction. Plaintiff, by way of answer to that contention; referred the court to article 996 of the Code of Practice, which reads:
“The case is different when such estates are in the possession of heirs, either present or represented in the state, although all or some of those heirs be minors; for in such case the actions for debts due from such successions shall be brought before the ordinary tribunals, either against the heirs themselves, if they be of age, or against their curators, if they be under age or interdicted.”
And the court, after quoting the article, and referring to the earlier jurisprudence, to the effect that no part of a succession comes legally into the possession of the beneficiary heir until it has been fully administered, or a partition has been legally effected, said:
“It may therefore, at least, be said that all the decisions are uniform, to the effect that, where the heirs, whether pure and simple or beneficiary, are legally in possession of an estate, they may be sued for its debts in courts of ordinary jurisdiction. So that the controversy narrows itself down to this: Can beneficiary heirs (minors are always such) come legally into possession, without the estate having been previously fully administered and liquidated? Notwithstanding the numerous authorities cited by counsel of defendants from our earlier reports, we think it now well settled that minors * * * may come lawfully into the possession of the estate of their deceased parent, without there having been any previous administration thereof.”
And G. P. art. 996, and the cases of Labranche v. Trepagnier, 4 La. Ann. 561, Monget v. Penny, 7 La. Ann. 134, and several others are cited in support of that proposition, after which the opinion proceeds as follows :
“The true doctrine is this — that successions accepted under benefit of inventory should, and must, be administered where the creditors or heirs of age require it. But, if no such demand for administration is made, the natural tutor of the minor heirs of the deceased may, as such, take possession and administer their interests therein, and that any creditors of the deceased may, under article 996 [C. P.] bring suit for their debts against the tutor in the courts of ordinary jurisdiction.”
*1065 And it was accordingly held that the major heir and the minors, being in possession, were properly sued for a debt of the succession, in a court of ordinary jurisdiction, and, “the plaintiff renouncing any right against the minors * * * beyond the property inherited,” that the minors were properly, condemned to that extent.
Blake v. Minors Kearney and Lake, 30 La. Ann. 388:
This was a suit brought in a parish court for a partition of the succession of Mrs. Adeline Dupuy Fenn among her descendants, in which the minor heir Frank Kearney was represented by his father, Richard A. Kearney, as tutor ad hoe, and the minor heir Ann Eliza Lake was represented by A. Petit, as tutor ad hoc, and the facts in which are otherwise stated by the court as follows, to wit:
“After the death of the ancestor, * * * her heirs of age and the minors (some of whom are declared to have been emancipated, and one of them, Ann Eliza Lake, to be under the dative tutorship of said Richard A. Kearney, who assumes to represent her) entered into an agreement by private act, whereby they declare and fix their respective interests in the estate, enumerate its effects in detail, and, to avoid the expenses of a judicial settlement, they, ‘the heirs of age and emancipated, and the said R. A. Kearney assuming the entire responsibility of this act as far as it regards the interests of his ward Ann Eliza Lake,’ do covenant and agree that said R. A. Kearney be constituted the agent of said heirs, with full authority to liquidate said estate, to sell its effects, to pay its debts, and thereafter to distribute to the heirs the balance according to their several rights, etc. * * * On the same day certain of the heirs acknowledge to have received, by way of distribution, from Kearney the sum of $250, being the balance of cash on hand belonging to the estate, after paying certain debts.”
It appears that the plaintiff in the case, Mrs. Euphrosine Blake, had caused herself to be appointed administratrix of the succession, but at what time or under what circumstances the record does not show. Richard A. Kearney, cited as tutor ad hoc of his son Frank, met the demand for partition by an exception to the jurisdiction of the court, based upon the ground that the heirs had gone into possession and had already effected the partition. But this court, through Mr. .Justice Spencer, who was the organ of the court in the case of Soye v. Price, supra, said:
“The sole questions, therefore, are, where some of the heirs are majors, accepting unconditionally, and some are minors, necessarily beneficiary heirs, and where there are no debts, can these heirs, by agreement, enter into possession and terminate, extrajudicially, the existence of an estate, where one of the major heirs demands an administration? Will such agreement and possession defeat a subsequent administration and take the estate out of the hands of the probate court?
“O. O. art. 1047, provides: ‘If there be several heirs to a succession, some of whom have accepted unconditionally, and others claim the benefit of the term for deliberating [benefit of inventory], the judge of the place where the succession is opened shall, notwithstanding, cause an inventory to be made * * * and shall appoint an administrator to manage them, until a partition * * * be made among the heirs.’
“A minor, ex necessitate legis, claims the benefit of inventory. The Oode directs, therefore, that an administrator shall be appointed to estates in which there are minor heirs, concurring with major heirs who accept unconditionally. The only exception to this rule we lately had occasion to review in the case of Soye v. Price, not yet reported. It is to the effect that the natural tutors of minor children may, as such, take possession of and administer the estates of the deceased parents of such children, unless and until creditors, or heirs of-age, demand the appointment of an administrator. It is admitted that plaintiff * * * has demanded to be, and been, appointed administratrix of this estate. We do not consider the acts of the major heirs as affecting the interests of the minors, who were totally without power, by themselves or tutors, to accept unconditionally the estate. * * * To terminate the existence of a succession, the heirs must all be sui juris, and have capacity to render themselves, by their acts, unconditionally liable for succession debts. This a minor cannot do; and therefore no extrajudicial acts or contracts of a minor can legally terminate the existence of the succession.”
Mayronne v. Waggaman, 30 La. Ann. 974:
It was shown that Eugene Hacker died in 1S71, leaving an estate in community, a widow, and eight children, of whom seven were minors; that the wife was confirmed as natural tutrix, and a year later was sent into possession, as owner in community of one half, and as usufructuary of the other half, *1067 of the estate;, that she then presented to the court a petition, representing that, in order to pay the debts of the succession, to carry on a mercantile business, to which she had succeeded, and to provide for her wants and those of the minors, it was necessary to sell certain stocks, and borrow money upon a mortgage of the real estate; and upon the advice of a family meeting, the proceedings of which were duly homologated, she was authorized to take that action, and did so. This court, however, found that the family meeting was illegally composed, and that its advice, that the tutrix be authorized to borrow money and mortgage the • property in which the minors were interested, in order to carry on a mercantile business, was illegal, and hence that neither the minors nor their property were bound for the debts of the mortgage.
Lemmon v. Clark, 36 La. Ann. 744 (quoting from syllabus):
“When the tutrix of minor heirs, in her capacity as such, takes possession of and administers the estate of the deceased parent of the minors, without any appointment as administrator, such act is equivalent to the entering into possession of the beneficiary heirs. The tutrix officially represents them alone; her possession is then-possession ; her aqts, within her lawful authority, are their acts. Soye v. Price, 30 La. Ann. 93. If the minor heirs are creditors of the estate of the parent, they cannot, on coming of age, compete with other creditors, before accounting for the movable property and revenues of the estate which came into their possession through their tutrix, and which, if consumed for their benefit, would extinguish the debt.”
In the body of the opinion it is said:
- “But here the tutrix acted in that capacity alone, and under the doctrine of Soye v. Price, represented the minors only, held possession for them, and ‘all her acts are in the name and in behalf of her wards.’ As representative of the beneficiary heirs in possession, creditors of the succession had the right to sue them through her and to recover judgment, restricted, of course, in its operation to the property inherited by them. Whatever she has received and appropriated of that property is, quoad creditors, a reception and appropriation by the heirs. If she has wronged the latter, they must look to her personally and to her bond; but, as against creditors, her acts are their acts as far as they were within her lawful powers as tutrix.”
■ Succession of Dumestre, 40 La. Ann. 572, 4 South. 328:
There were a succession that owed debts, major and minor heirs, and a dative tutor; and the question presented was whether an adjudicatee could be compelled to accept title to immovable property, sold by order of court, at the instance of the dative tutor of the minors and by the advice of a family meeting, to pay the debts of the succession. It was held that he could not; and Bermudez, O. J., assigned the following as one of the reasons, to wit:
“Tested by the fundamental allegation of the petition, which is that the sale was necessary to pay the debts of the succession, the conclusion is warranted that the object in view was to pay debts, by the tutor administering the succession. In such case the sale could not be sustained, as there were two heirs of age, and the tutor could not control the succession as an entity; for it is well established that a tutor can ex officio administer a succession only where it accrues exclusively to his wards” (italics-by the author of the opinion).
In the case thus quoted, Justice Fennerhanded down a dissenting opinion, in which he said, among other things:
“The tutor has not acted as administrator, either actual or constructive. As his wards were not the sole heirs, he could not have authority to assume administration of the whole succession. He has scrupulously confined his official action within the limits of his authority as tutor, extending it only to the interest of the minors; while the sale of the remaining interest is expressly based, both by himself and the judge, upon the concurrence of the major heirs” (italics by present writer).
Succession of Bourgeois, 43 La. Ann. 347, 9 South. 34:
I-Ield that:
“The tutor of minor heirs, in the absence of a demand for administration by creditors, or heirs of age, has a right to take possession of succession property and administer their interest therein.”
Tutorship of Minors Scarborough, 43 La. Ann. 316, 8 South. 940:
*1069 A succession falling wholly to minor heirs had been administered by their tutor as such,.and a creditor ruled him to show cause why so much of the property as' might be necessary to pay the creditor should not be sold for that purpose, to which the defendant pleaded the exception of “no cause of action,” which was sustained by the district court. Plaintiff appears to have attached to and made part of his rule an account which had been filed by the defendant in the district court, of which this court said:
“His account, in so far as it purports to deal with the assets and liabilities of the succession of the deceased ancestor, is one of administration ; and in so far as it appertains to charges made against the capital of the minors, on account of alleged expenditures for their service and maintenance, is one of tutorship only — the rendered account having been notified to creditors of said succession by advertisement and to the undertutor by citation.”
Dealing with the matter (as it was obliged to do) from the the face of the papers, the court said that it did not appear that the minors had entered into possession of their ancestor’s estate, and that, until that fact could be -made to appear affirmatively, it would have to hold that “a tutor, acting as administrator of an open succession,” does not possess apparently for the heirs, and that the property will not “pass to him as tutor until his administration as such is terminated.”
The case thus referred to came before this court a second time, and is reported in Semple v. Scarborough, 44 La. Ann. 288, at pages 291, 292, 10 South. 858, at page 859, and it is there said by the organ of the court:
“From the abbreviated statement of the facts in the case it will be' observed that the efforts of the tutor in the administration of the succession were to pay its debts, which were small in amount, not exceeding $4,000. The mercantile and planting operations were conducted for this purpose. In his acts of administration he found it necessary to borrow money to pay off the indebtedness of the deceased and, to continue the business, to pay off the amounts that he borrowed. * * ' * • The acts of the tutor in administering for the heirs and for the creditors cannot be distinguished. His administration was an entirety — one effort of administration to make money to liquidate the indebtedness. The minors only had a residuary interest in the succession after the payment of the debts of the succession. * * * Until the tutor’s administration of the succession is terminated the property will not pass to him as tutor.”
Succession of Leverich, 47 La. Ann. 1665, 18 South. 700:
The appeal was brought up, by an adjudicatee, from a judgment ordering that he accept title. We gather from the opinion that the succession had fallen to minors exclusively, and that the sale was provoked by the tutrix, administering upon the advice of a family meeting, duly homologated, in order to pay a debt secured by vendor’s lien upon the property which was sold. The sale was sustained.
Succession of Yarutzky, 52 La. Ann. 1913, 28 South. 328 (quoting from the syllabus):
“An adjudicatee of real estate, sold at the instance of a tutor administering a succession, is not bound to accept title, where it appears that the order was obtained, and the sale made, without the advice of a family meeting.”
The court found that the succession, when opened, owed no debts, and in the body of the opinion a number of cases are referred to, and the ruling in the Succession of Weber, supra, is categorically affirmed.
Childs v. Sheriff, 107 La. 270, 31 South. 751 (quoting from the syllabus):
“A probate sale, expressly made upon the petition of the tutrix, acting as administratrix of a succession, to pay the purchase price of property due in its entirety by the succession, and secured by * * * vendor’s privilege on the property sold, conveys title to the purchaser, though the sale was not made upon the recommendation of a family meeting in behalf of the minor heir of the deceased father.”
Succession of Keppel, 113 La. 246, 36 South. 955:
The decedent left a widow and minor children; the widow forfeited the tutorship by marrying again, and a dative tutor was ap *1071 pointed, who administered the succession in that capacity, without objection from creditors, and upon the recommendation of a family meeting, duly homologated, obtained an order for the sale of immovable community property to pay community debts, and the sale was made accordingly and sustained (two members of the court dissenting).,
Elizardi v. Kelly, 115 La. 712, 39 South. 851:
The husband, being the surviving partner of the community, and natural tutor of the minors, issue of the marriage, administered the succession of his wife in that capacity, and provoked a sale of community property for the payment of community debts, without first obtaining the advice of a family meeting; but such meeting was thereafter convoked, and approved and ratified the sale, and the proceedings were homologated by the court. Held, that the adjudicatee should accept title.
Higginbotham v. Daigle, 120 La. 464, 45 South. 392:
The evidence disclosed a combination, between the natural tutor and the undertutor, whereby property, in which minor heirs and their major coheirs were interested, was offered for sale, upon the recommendation of a family meeting, and was adjudicated to the undertutor, as an interposed person, acting on -behalf of the tutor. The terms of the sale, as fixed by the family meeting, were “cash,” which (as the court found) “no one paid. * * * ” There was, in consequence, no consideration and no price. The court further found as follows:
■“The ground upon which the case was decided in the district court is equally as fatal. The tutor did not- represent the major heirs. He could not dispose of their rights in the property. Nothing shows that, the major heirs consented to the sale, or that they in any way authorized Theogene Daigle, the tutor of the minors, to sell their property.. The tutor had qualified to represent the minors. That did not give him the right to sell the property without giving the least notice to the majors. The sale as to these majors was a nullity, the effect of which is to annul the whole sale.”
“Succession” is variously defined to be: “The transmission of the rights and obligations of the deceased to the heirs;” “the estates, rights and charges which a person leaves after his death,” including “all that has accrued thereto since the opening of the succession, as also the charges to which it becomes subject”; and, finally, “that right by which the heir can take possession of the estate of the deceased, such as it may. be.” O. C. art. 871 et seq.
[2] The law declares that a succession is acquired by the legal heir, who is called to the inheritance, immediately .after the death of the deceased person whom he succeeds, before he has taken any steps to put himself in possession, or has expressed any will to accept it; that children, idiots, those who. are ignorant of the death of the deceased, are not the less considered as being seised of the succession, though they be .seised of right and not in fact; that, being seised of the succession from the moment of its being opened, -the right of possession, which the deceased had, continues, in the person of the heir, as if there had been no interruption, and independent of the fact of possession; that, the heir being considered as having succeeded to the deceased from the instant of his death, the first effect of this, right is that the heir transmits the succession to his own heirs, and the second effect is to authorize the heir to institute all actions which the deceased had a right to institute, and to prosecute those already commenced. C. O. art. 94, et seq. A succession may, however, consist, according to the second definition given above, of “estates, rights and charges,” or of estates and rights alone, or of charges alone, and in either case the heir (of age), may be unwilling to accept it. The law, as stated, is therefore modified by other provisions, applicable, on the one hand-,. *1073 to the heir of full age and sui juris, and, on the other, to the minor, the interdict, and the married woman. The Civil Code declares that:
“No one can be compelled to accept a succession ; * * * be may accept or renounce.” Article 977. “Though the succession be acquired by the heir from the moment of the death of the deceased, his right is in suspense, until he decide whether he accepts or rejects it. * * * ” Article 946.
If the beneficiary heir declare that he accepts the succession simply, all the effects which compose it must immediately be delivered to him; but then he becomes responsible for the debts of the succession, not only to the amount of the effects thereof, but personally, and the creditors of the deceased can obtain judgment against him. Article 1056. The simple acceptance may be express or tacit. Article 9S8. If the person who is called to the succession possess himself or dispose of effects found in the succession, thinking that they belong to it, he does an act which makes him liable as heir (article 992); and so, if, when cited before a court of justice as an heir, for a debt of the deceased, he suffers judgment to be given against him in that capacity, without claiming the benefit of inventory or renouncing the succession (article 1000). It is, however, necessary to distinguish acts of ownership from those of mere administration, or preservation, or preparatory acts tending to ascertain the value of the succession. Article 997. Though it may be necessary to sell some of the .effects to prevent loss or waste, such sale will render the person called to the succession liable as heir, unless he cause himself to be authorized by the judge, and make the sale at auction, on a petition in which- he shall allege the necessity and protest that he does not so intend. Article 999. Those who are incapable of contracting obligations cannot accept inheritances; but tiieir curators may accept for them, by pursuing the formalities prescribed by law. Article 1004. The acceptance of a married woman, without the authorization of her husband, is not valid. Article 1005. He who is called to the successipn is considered the heir so long as he does not renounce. Article 1014. The renunciation is not presumed; it must be made by authentic act. Article 1017. Only those who are capable of alienating are capable of renouncing. Article 1018. The heir who wishes to enjoy the benefit of inventory and the term for deliberating is bound, before committing any act of heirship, to cause the seals to be affixed on the effects of the succession, by the proper officer (article 1034), and, within ten days thereafter, to cause an inventory to be made (article 1035). In the event of the failure of the presumptive heirs, present or represented in the parish, to take .those steps, any creditor may cite them before the judge,' in order to oblige them to declare whether they accept or renounce the succession, and, if they are silent or make default, they are considered to have accepted as unconditional heirs, and may be sued as such. Articles 1035, 1036. If, on the contrary, the heirs thus cited declare that they wish to take the benefit of inventory, and have the delay for deliberating, which is 30 days from the date of the last inventory, the judge shall grant the delay, and order all proceedings against them, personally or as heirs, to be stayed until the term has expired. Articles 1038, 1050. Whether the heir claims directly the term to deliberate, or whether it is claimed at the suit of the creditor, it is made the duty of the judge to cause an inventory to be made (article 1036), and thereupon to name an administrator, to manage the property of the succession and to oblige him to give “good and sufficient security,” or a special mortgage, as a guaranty for his administration (article 1041). In the choice of the administrator, preference is to be *1075 given to the beneficiary heir, if he be of age and present in the state. Articles 1042, 1043.
“If all the beneficiary heirs he minors, their tutors can claim the preference for the administration, and it shall be given them, under the charge of their being personally responsible for their acts of administration, and giving security, as before required, though these tutors should be the father or mother of the minors.” Article 1044. “If there be several heirs to a succession, some of whom have accepted unconditionally, and others claim the benefit of the term for deliberating, the judge * * * shall, notwithstanding, cause an inventory to be made of the effects of the succession, and shall appoint an administrator to manage them, until a partition of the same be made among the heirs.” Article 1047. “The security to be given by every administrator thus named shall be one-fourth beyond the estimated value of the movables and immovables, and of the credits comprised in the inventory, exclusive of bad debts. * * * ” Article 1048. “The administrators thus chosen have the same powers and are subject to the same duties * * * as the curators of vacant estates, under the modifications hereafter made.” Article 1049. “The administrator cannot sell the immovables of the succession * * * until the term for deliberating has expired,” but he may sell the movables, upon the authorization of the judge. Article 1051. “During the term for deliberating, the beneficiary heir cannot be compelled to assume the quality of heir, nor can any judgment be rendered against him.” Article 1052. “The effect of the benefit of inventory is that it gives the heir the advantage: 1. Of being discharged from the debts of the succession by abandoning all the effects of the succession to the creditors and legatees. 2. Of not confounding his own effects with those of the succession, and of preserving against it the right of claiming the debts due him.” Article 1054. “If the heir declares that he is not willing to accept the succession, otherwise than under the benefit of an inventory, the person appointed administrator * * * shall proceed to the sale of the property of the succession, and to the settlement of its affairs. * * * The beneficiary heir shall, at the time of such settlement, have a right to be paid, as any other creditor, all debts due him by the deceased, and shall moreover be entitled to the balance of the proceeds of the sale of the estate, if any such balance be left after payment of all the debts and charges of the succession.” Article 1058.
If the heir who is called renounces the succession in due form, and no others present themselves to accept it, the administrator is required, upon the authorization of the judge, to sell the effects, movable and immovable, present a tableau of distribution, and, after due advertisement of the same, distribute the proceeds in his hands among the creditors and legatees. Articles 1063 et seq.
The Code of Practice contains the following provisions which have been invoked, at various times, in connection with the questions here presented, to wit:
Heirs and universal legatees may be sued for civil reparation of injuries caused by the crimes or misdemeanors of the deceased, whose successions they have accepted. Article 25. If one against whom there was a cause of action die, the suit may be carried on against the heirs (meaning necessarily the heirs who have accepted the succession). Article 120.
“During the time allowed for making the inventory and for deliberating, the judge shall appoint an administrator to retain the property, if any of the creditors * * * shall require it, and in making such appointment he shall prefer the beneficiary heir; such administrator shall give good and sufficient security, in the same manner as curators of vacant estates and absent heirs, unless the said administrator shall prefer giving such security by a special mortgage.” Article 976. “It shall be the duty of the several judges of probate, on the application of the creditors or any creditor of a vacant estate, to cause, on the requisite advertisement being made, so much of the property of the said estate as is necessary to pay the debts of the same which may be due to be offered for sale, and sold, at public auction. * ,? *» Article 990. “It shall be the duty of the judge of probate in all cases of vacant estates, on the application of the creditors or any creditor thereof whose debt shall not then be due, to sell, after the usual advertisements, * * * so much of the estate as will be sufficient to pay the claim or claims of the creditors who shall make the application, and on such terms of credit as will correspond with the falling due of the several claims of the creditors.” Article 991.
“The principles contained in the two preceding articles shall apply to all successions accepted with benefit of inventory, whether the heirs or minors are of age, and to all such successions administered by administrators.” Article 992. “The case is different when such estates are in the possession of heirs either present or represented in the state, although all or some of those heirs be minors; for in such case the actions for debts due from such successions shall be brought before the ordinary tribunals, either against the heirs themselves, if *1077 they be of age, or against their curators,_ if they be under age or interdicted.” Article 996.
The .Civil Code declares that:
“The tutor shall have the care of the person of the minor, and shall represent him in all civil acts. He shall administer his estate as a prudent administrator * * * and shall be responsible for all damages resulting from a bad administration. * * * ” Article 327. “The immovables of the minor cannot be alienated nor mortgaged, unless, on the representation of the tutor that it is for the interest of the minor that these objects or a part of them should be sold or mortgaged, a family meeting duly assembled shall declare that the sale or mortgage is of absolute necessity, or of evident advantage to the minor.” Article 339. “In case the family meeting shall consider the sale or mortgage to be advantageous to the minor, it shall set forth the reasons of its determination, in order that the judge may decide whether he ought to cause it to be homologated or not, and shall also fix the terms of credit on which the property shall be sold, and the other conditions of the sale, if the case requires it.” Article 340. “The sale of the property of the minor shall be authorized by the judge, and made at public auction. * * * ” Article 341. “The minor’s property cannot be sold for less than the amount of its appraised value mentioned in the inventory. * * * ” Article 342.
It will readily be seen that many of the provisions to which we have thus referred apply exclusively to heirs who are of full age and sui juris, that others apply exclusively to minors, interdicts and married women, and that still others are equally applicable to all classes. Article 977, G. C., which declares that no one can be compelled to accept a succession, also declares that all successions are accepted for minors, by operation of law, though with benefit of inventory. It will also be seen that, although the purpose of the provisions relating to the benefit of inventory is, no doubt, to enable the heir to protect himself against the debts of the succession, and at the same time preserve his rights as a creditor and an heir, the right of the heir who is sui juris to renounce any succession that may fall to him, even though it may be free of debt, is unqualified, and that the right of seisin and possession, conferred on him by G. C. art. 940 et seq., is as effectually suspended, until he decide whether he will accept or reject it, in that case as in the case of a succession that is burdened with debt. So that, whenever there are heirs who have the option of accepting simply, accepting with benefit of inventory, or renouncing, a succession, and whose rights of seisin and possession are suspended until they decide upon the course that they will adopt, there is, necessarily, an interval of time during which the succession has the status of a juridical entity, with rights and obligations which are distinct from those of the natural persons who may be interested in it, and for the assertion and discharge of which the law contemplates that such entity shall be provided with a legal representative, in the form of an administrator, if the creditors, whose interests are paramount, require it. In any event, that is to say, whether the succession be indebted or not, if the heirs are all sui juris, and accept simply, they are entitled to be put in possession, subject to the right of the creditors, where the succession owes debts, to demand security, and to require the appointment of an administrator if the security be not furnished. No such right is conferred upon minors, to whom a succession burdened with debt may have fallen, since they have no capacity either to accept unconditionally or to renounce, but, as the law accepts for them with benefit of inventory, their rights are governed by that provision which declares that, upon the settlement of the succession by the administrator, they shall be paid any debts that may be due them, “and shall, moreover, be entitled to the balance, * * * if any such balance be left, after payment of all debts and charges of the succession.” Where, however, the succession owes no debts and falls to minor heirs exclusively, the provisions of articles 940 to 945, O. O., would seem at once to become operative, since, having no option to accept or reject it. *1079 article 946 can have no application to them, and the right of seisin and possession, conferred by the preceding articles, is not suspended. And the same thing is true where the succession, being free of debt, falls to heirs of full age and minors conjointly, and the heirs of full age accept simply, or unconditionally. It is true that article 1047, O. 0., declares that:
“If there be several heirs to a succession, some of whom have accepted unconditionally, and others claim the benefit of the term for deliberating, the judge * * * shall * * * cause an inventory to be made of the effects of the succession, and shall appoint an administrator to manage them, until a partition of the same be made among the heirs.”
But it is clear that the article has no application to the case stated, which is a case where there are several heirs, some of whom accept unconditionally, but the others of whom do not claim the benefit of the term for deliberating. The law does not allow the minor heir a term for deliberating, and there is no provision under which he could claim, or derive, any benefit from it, since the succession is accepted for him immediately upon its being opened, upon the condition that he shall not be liable for its debts, beyond the value of the property that he may receive — which is the “benefit of inventory” — and, if there are no debts, he and the heir of age who accepts unconditionally become the absolute owners of the property, .with seisin and right of possession thereof; and the administrator would have no function to discharge, save to surrender the same, for the last clause of the article, “until a partition of the same shall be made among the heirs,” is to be construed with reference to the fact that the article does not apply where the succession is free of debt, and with reference to other provisions of law, under which persons who own property in indivisión may so hold it until there is a demand among themselves for a partition.
In Succession of Harkins, 2 La. Ann. 925, it was said:
“An administrator is the trustee of the creditors; his first duty is to them, and his imperative obligation is to watch over their interests.”
In Succession of Story, supra, in which, there being heirs of age and minors of a succession which owed no debts, the court rejected the application of one of the heirs of age to be appointed administrator, and concluded by saying:
“We concur with the appellant’s counsel that the only fruits of this administration are litigation, unnecessary expense, and useless delay, and that no case was before the judge on which he was authorized to grant it. The succession had no debts, and we are at a loss to discover any one useful object to be attained by embarrassing the succession with this unnecessary administration.”
See, also, Succession of Ducloslange, 1 La. Ann. 181; Succession of Walker, 32 La. Ann. 321; Succession of Charmbury, 34 La. Ann. 26; Martin v. Dupre, 1 La. Ann. 239; Allentan v. Bergeron, 16 La. Ann. 191; Succession of Baumgarden, 36 La. Ann. 46; Succession of Geddes, 36 La. Ann. 903; Succession of Powell, 38 La. Ann. 181; Succession of Graves, 50 La. Ann. 435, 23 South. 738; Succession of Wintz, 111 La. 41, 35 South. 377; Succession of Glancey, 114 La. 766, 38 South. 554; Succession of Weincke, 118 La. 206, 42 South. 776; Miquez v. Delcambre, 125 La. 176, 51 South. 108.
It would appear to be well settled, therefore, that in general, and unless there be some peculiar conditions requiring it, an administrator will not be appointed to a succession which owes no debts, whether falling to heirs of full age, or minors, or both, and that such appointment is not necessarily to be made, and will not be made unless creditors require it (upon their failure to obtain security) to a succession which owes debts, but which falls to heirs of age exclusively. The ruling thus referred to includes cases in which the successions owed debts which were *1081 trifling in comparison to the value of the property; and there are other cases in which it has been applied to the widow in community and usufructuary demanding to be put in possession in those capacities. Succession of Pratt, 11 La. Ann. 201; s. c., 12 La. Ann. 457; Burton v. Brugier, 30 La. Ann. 478; Welch v. Dixon, 36 La. Ann. 702.
In the case of Bryan v. Atchison, it was held, as we have seen, that a succession, falling exclusively to minors, though burdened with debt, may, in the absence of any demand by creditors for the appointment of an administrator, be administered by the natural tutrix of the minors, so as to bind the heirs and creditors, and that in such capacity the natural tutrix may defend a suit brought to recover a debt claimed to be due by the succession of the deceased husband and father, and may defend a proceeding to compel the sale of succession property in satisfaction of the judgment therein obtained and of other -debts. The doctrine so enunciated (in 1847) has been many times affirmed, cited, and acted on, and has become a rule of property which we do not feel at liberty to disturb. Succession of Story, 3 La. Ann. 502; Labranche v. Trepagnier, 4 La. Ann. 561; Dickason v. Smith, 5 La. Ann. 196; Fabre v. Hepp, 7 La. Ann. 6; Monget v. Penny, 7 La. Ann. 134; Hair & Labuzan v. McDade, 10 La. Ann. 535; State v. Heirs of Leckie, 14 La. Ann. 641; Succession of Weber, 16 La. Ann. 421; Vincent v. D’Aubigne, 19 La. Ann. 528; Bland v. Lloyd, 24 La. Ann. 604; Soye v. Price, 30 La. Ann. 95; State ex rel. Jones v. Shreveport, 33 La. Ann. 1247; Succession of Sadler v. Henderson, 35 La. Ann. 826; Succession of Lamm, 40 La. Ann. 318, 4 South. 53; Succession of Dumestre, 40 La. Ann. 571, 4 South. 328; Tutorship of Minors Scarborough, 43 La. Ann. 320, 8 South. 940; s. c., 44 La. Ann. 293, 10 South. 858; Vincent v. Phillips, 47 La. Ann. 1240, 17 South. 786; Succession of Keppel, 113 La. 246, 36 South. 955 ; Succession of Weincke, 118 La. 207, 42 South. 776. The ruling so made must, however, be considered in connection with the case before the court. It is to be presumed, since the face of the record discloses nothing to the contrary, that Neibert, the decedent, and his wife were married under the régime of the community, and that the property in controversy, in so far as it was found in his succession, was community property. Succession of Manning, 107 La. 457, 31 South. 862; Succession of Burke, 107 La. 82, 31 South. 391; Succession of Pratt, 11 La. Ann. 201; Id., 12 La. Ann. 457; Rocques v. Freemen, 125 La. 65, 51 South. 68. The court had before it, then, the widow in community, who, as- such, owned one-half of the property which was sought to be made liable for the debt sued on, and was entitled to the usufruct of-the other half, and who, as natural tutrix of the minors, represented the owners of the half of which she had the usufruct. Beyond that, the suit which she defended was brought, by the surviving partner of her deceased husband, for the recovery of a debt due to the partnership, and the property in question was partnership property; so that it was liable, first, for 'the debt sued for as a partnership debt, after which the balance, if any, fell into, the community, and was liable for its debts, before anything could inure to the individual creditors of the decedent. Thompson v. Vance, 110 La. 26, 34 South. 112. In her various capacities, therefore, the widow and tutrix represented all the rights in and to the property, save such as pertained to the creditors,- and, in the absence of any demand, or attempt, on their part, to provide for its administration, she was within her rights and within the rights of those whom she represented in assuming such administration, at least to the extent necessary for the protection of those rights. Beyond that, there being no one else interested in the property save the creditors, and they *1083 being sui juris, it was competent for them to waive their right to demand the appointment of an administrator who would give security, and to litigate their claims with the widow in community and tutrix, as representing the only other parties in interest, and it was competent for her to defend any proceedings that might affect the interest represented by her, since she was at liberty to do as she pleased with her own, and she thereby waived no rights of her minors.
If, under these circumstances, all the creditors of the succession had been joined as plaintiffs in the suit, and in the proceeding for the sale of the property, no question could have arisen as to their being bound, for, although the litigation would have involved the settlement of the affairs of the juridical entity known as the1 “succession,” which, it was said, was not represented, every person interested in those affairs, and in that entity, would have been before the court, demanding, or litigating the demand for, that settlement, and must have been concluded by the final judgment of a court of competent jurisdiction and of last resort. As the matter stood, it was an administrator appointed some three years later who sued to set aside the proceedings, and, although he appears to have alleged that they, and the sale, were ex parte; and without notice “to any one representing the succession,” he does not appear to have alleged that the other creditors, if there were any, were ignorant of what was being done, or that there was any concealment or fraud therein, or that the property failed to bring a fair price. The court, therefore, in substance held, mainly upon the authority of article 376, O. P., that, as the creditors had not required the appointment of an administrator, it was to be presumed that they did not desire that one should be appointed, but were satisfied to effect the settlement of their claims against the succession contradictorily with the widow and natural tutrix . (or rather with the natural tutrix, the inference that she was also widow in community and usufructuary having been drawn by us from the face of the record), and that their nonaction and the recognition thus accorded her, as the administratrix de facto of the only interests in the succession which were adverse to theirs, were sufficient to authorize her to act as she did and to make her action binding upon the creditors, the minors, and herself. It will be remarked, with reference to that conclusion, that the property was ordered to be sold at the instance of the creditor, and not of the tutrix, and that the court emphasized the fact that the succession was one the sole heirs of which were the minors, whom the tutrix was authorized to represent in all civil acts. Those distinctions have sometimes been lost sight of, but they should be borne in mind; for, whereas, by reason of the failure of the creditors to exercise their right to require the appointment of an administrator, they appear to have acquiesced in the administration by the tutrix and were held to be bound by it, the ease was not altogether the same with regard to the minors. The creditors were sui juris, and it was perfectly competent. for them to consent, so far as their interests affected the matter or were affected by it, that the tutrix should administer the succession exactly as though she individually had been the sole heir, of full age, and had accepted unconditionally, and they were willing that she should administer without giving security, in which case she might have sold the property at private sale, have obtained an extension of time for the payment of the debts, or have made any other arrangement that she and the creditors might have agreed on. But what the creditors may have been willing to consent to did not, and could not, have the effect of removing any of the restrictions which the' law imposes upon the *1085 authority of the tutrix, in the matter of the administration and alienation of the property of her minor wards, and they had no capacity to acquiesce in the removal of those restrictions. The most that can he said of the situation was that she was permitted by the creditors to take charge of the entire succession, as an heir of full age might have done, and deal with it as property belonging to the minors which was incumbered with debt. But, as in the case of any other immovable property belonging to the minors and so incumbered, she could not have sold or mortgaged it of her own. motion to pay the debt, without the advice of a family meeting, homologated by the court. And so, in the case before the court, the tutrix could not have done so; for, as to the minors, she was still their tutrix, and nothing more, and the law declares that the immovable property of the minor shall not be alienated or mortgaged, unless upon the representation of the tutor, or tutrix, that it is for the interest of the minor, a family meeting shall declare that it is of absolute necessity or of evident advantage to the minor, and the judge shall approve that finding and order the sale or mortgage to be executed. Moreover, the only authority which the law confers upon tutors and tutrixes to assume the administration of successions falling to their wards is coupled with the singularly explicit restriction, to wit:
“And it shall be given them, under the charge of their being personally responsible for their acts of administration, and giving security, as before required, though these tutors should be the father or mother of the minors.”
Conceding that the security thus required is intended rather for the benefit of the creditors than of the minors, the fact remains that the tutrix is to administer upon her own personal responsibility, and not upon the responsibility of the minors, and, hence, that she administers because she is tutrix, and not as tutrix, just as a prominent official may' attend a banquet or open the baseball season, because he is what he is, and yet exercise no function of his office.
If, however, a succession falling to the minor is thus left by the creditors under the administration of the tutrix, it is none the less liable for its debts; and though it be conceded that, with the consent or acquiescence of the creditors, it may be administered by the tutrix, as a thing belonging to the minor, or in which the minor has such an interest as to require that the tutrix, in default of any one else, assuming that responsibility, should administer it, the creditors may demand of the court that the property of which it consists, and which remains their common pledge, be sold in order that they may be paid, and the tutrix may appear to defend the interest of her ward for the purposes of such demand, as in any other proceeding affecting that interest, since the law declares that she shall represent him in all civil acts. It is, however, going beyond anything contained in the law to say, because the creditors are willing that the representative of the minor shall also be their representative, that the minors are as much bound by her acts of administration performed in behalf of the creditors as by those performed in their behalf. That is true where the authority which the law confers on her as tutrix concurs with that conferred on her by the creditors as administratrix, as, for instance, where she finds in the succession funds wherewith to pay the debt due to the creditors. But where there are no funds, though the creditors may be willing that she could sell the immovable property of the succession for the payment of such debt, the law declares that the immovable property of a minor cannot be sold, save by the advice of a family meeting, and if, so far as the minors are concerned, she administers the succession as a thing belonging *1087 to them, she is bound by that restriction. Said the court in Succession of Weber, 16 La. Ann. 422. 423:
“The law accepts for the minor any succession which falls to him with the benefit of inventory. If, therefore, there should be found in the patrimony of the minor a succession, the tutor may. administer it; not because it is so written in the letters of tutorship, for such express authority cannot there be found, but because the succession is an effect, a thing belonging to the minor, and therefore subject to the administration of the tutor for the ultimate advantage of the minor. Now, the Civil Code, art. 334 [now 339], makes the convocation of a family meeting necessary to the alienation of a minor’s lands or slaves.”
See, also, Succession of Schuttler, 21 La. Ann. 713; Succession of Bourgeois, 43 La. Ann. 249, 9 South. 34; Succession of Yarutzky, 52 La. Ann. 1913, 28 South. 328.
The heirs of full age (in this case), like the creditors, might have required that an administrator be appointed, if they had thought proper to do so; but they, like the creditors, appear to have found it to their interest to leave the administration and settlement of the succession to the widów and tutrix. They now insist upon no complaint of that administration, save that, in the matter of the sale of the land here claimed, the widow and tutrix was unauthorized to represent them, because they had attained majority and were capable of acting for themselves. They do not allege that they were ignorant of the fact that the succession owed the debt for which the property was sold, or that, they were not advised, at the time, of the intention and fact of the sale, or that there was any other means by which the money to pay the debt could have been obtained; nor do they allege that the price obtained for the property was less than its value. The petition does not even allege where the plaintiffs reside, and there is no evidence in the record on that subject, and, in the absence of anything to the contrary, we see no reason to doubt that they reside, and have always resided, in the community in which the property claimed, and which we take to have formed part of that constituting the family home, is situated. Upon the case as thus presented, our conclusion is that the major heirs must be held to have known of, and to have acquiesced in, the administration, by their mother, of their father’s succession, and of the sale, at her instance, of the land in question, for the payment of the debt of that succession, and that, as to them,, the sale should be given all the effect of a probate sale, conveying a just title, under which the defendants, in good faith, have possessed, as owners, openly, ’peaceably, and .uninterruptedly'for more than ten years, and that defendants are protected by such acquiescence, as also by the prescription of ten years, acquirendi causa, against the claim which those heirs here assert. Leverett v. Loeb, 117 La. 312, 41 South. 584; Irwin v. Flynn, 110 La. 829, 34 South. 794; Thibodaux v. Barrow, 129 La. 395, 56 South. 339; Kerlec v. N. O. Land Co., 130 La. 111, 57 South. 647; Succession of Balovich, 130 La. 1043, 58 South. 873.
The minor heirs were, however, incapable of acquiescing in anything done by their tutrix which involved an exercise of authority in excess of that which the law conferred upon her for the administration of their property, and hence were not bound by the sale, provoked by her in violation of the prohibitions of the law; nor does the prescription of ten years, acquirendi causa, apply to their claim, since it has been less than that time since they attained their majorities.
It is therefore ordered, adjudged, and decreed that the judgment of the district court and Court of Appeal be avoided and reversed, in so far as it rejects the demands of the plaintiffs Zelima Deshotels, wife of Elee Granger, Octave Deshotels, and Avie Deshotels, and that there now be judgment in favor of said plaintiffs and against the de *1089 fendants) named in the petition, decreeing said plaintiffs be the owners, entitled to possession of an undivided three-ninths interest in the tract of land, described in the petition as — ■
“150 arpents of land, situated in that portion of Maraou known as Lanse Johnson, or Johnson’s Cove, and being in the southeast quarter of section 36, in township four south, of range one west, and being bounded, on the north, by the land of Leon Bordelon; on the south, by land of Mrs. Israel Deshotels, Sr.; on the east, by the land of Olivier Deshotels; and on the west, by land now, or formerly, belonging to J. L. Chapman.”
It is further decreed that the rights of the parties with respect to any claim that plaintiffs may have for rents and revenues, and that defendants may have for reimbursement of moneys expended in buying or improving said property, be reserved. It is further decreed that said judgment be affirmed in so far as it rejects the demands of Olivier I. Deshotels, Evea Deshotels, wife of Arsina Vidrine, Armellien Deshotels, Israel Deshotels, Jr.; Ernest Deshotels, and Colastine Deshotels, wife of Doxy Manual. It is further decreed that the plaintiffs last above named and the defendants pay the costs of this suit, in all courts and in equal proportions.
PROVO STY, J., absent on account of illness, takes no part.